1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ESTATE OF CHARLES CHIVRELL, et al.,        Case No. 22-cv-00019-HSG

          Plaintiffs,

8
                                                **ORDER GRANTING IN PART AND**
9          v.                                   **DENYING IN PART THE CITY**
                                                **DEFENDANTS' MOTION TO DISMISS**
10   CITY OF ARCATA, et al.,                     **AND GRANTING IN PART AND**
                                                **DENYING IN PART THE STATE**
11        Defendants.                           **DEFENDANTS' MOTION TO DISMISS**

12                                              Re: Dkt. Nos. 2, 21, 26, 40

13

14        Before the Court are two motions to dismiss.  One is filed by Defendants City of Arcata,

15   Arcata Police Department ("APD"), APD Police Chief Brian Ahearn, APD Sergeant Brian

16   Hoffman, and APD Officer Joseph Rodes (collectively, the "City Defendants"), Dkt. No. 21, and

17   another is filed by Defendants State of California, California Highway Patrol ("CHP"), and CHP

18   Officer Michael Griffin (collectively, the "State Defendants"), Dkt. No. 26.  For the reasons

19   below, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' motion and

20   **GRANTS IN PART** and **DENIES IN PART** the State Defendants' motion.

21   I.    **BACKGROUND**

22        For the purpose of deciding the motions, the Court accepts the following as true:

23        In the late morning of September 9, 2021, Charles Chivrell, a 35-year-old mentally-ill man,

24   was walking down a rural road in Humboldt County, California.  He carried a briefcase and had a

25   firearm holstered.  In response to reports of a suspicious person with a gun, officers from both the

26   APD and CHP were dispatched to Mr. Chivrell's location.  Upon arriving, the officers followed

27   Mr. Chivrell in their patrol cars.  They yelled at Mr. Chivrell to stop walking but he continued to

28   walk along the road.  Eventually, APD Sergeant Hoffman got out of his patrol car and fired

1    several pepperball rounds at Mr. Chivrell's back, injuring him.  When he was hit, Mr. Chivrell

2    dropped his briefcase and started to run.  CHP Officer Griffin then shot Mr. Chivrell in the back of

3    his head, killing him.

4        Plaintiffs Arielle Chivrell, K.C., and D.C.[1] bring eleven claims for relief:[2]  (1) excessive

5    force (42 U.S.C. § 1983); (2) the Rehabilitation Act; (3) the Americans with Disabilities Act

6    ("ADA"); (4) unwarranted interference with familial association under the Fourteenth Amendment

7    (42 U.S.C. § 1983); (5) unwarranted interference with familial association under the First

8    Amendment (42 U.S.C. § 1983); (6) excessive force under California law; (7) the Tom Bane Civil

9    Rights Act; (8) battery; (9) intentional infliction of emotional distress; (10) negligence; and (11)

10   wrongful death.

11       Both the City Defendants and the State Defendants move to dismiss.[3]  Dkt. Nos. 21, 26.

12   **II.    LEGAL STANDARD**

13       **A.    Rule 12(b)(6)**

14       Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

15   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

16   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

17   granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

18   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

19   _____

20   [1] K.C. and D. C. are minors.  They have filed an ex parte motion asking the Court to appoint
     Arielle Chivrell, their mother and legal custodian, as their guardian ad litem.  Dkt. No. 2.
21   Defendants do not oppose.  Accordingly, the Court **GRANTS** the motion.

22   [2] Plaintiffs agreed to dismiss their state-law claims (causes of action six through eleven) against
     the State of California and CHP.  Dkt. No. 27 at 2.

23   [3] In July 2022, Plaintiffs moved under Rule 15(a)(2) to amend their complaint to add two new
24   defendants and factual allegations regarding those new defendants.  Dkt. No. 40.  Neither the City
     Defendants nor the State Defendants oppose the motion, but both ask the Court to apply their
25   pending motions to dismiss to the amended complaint.  Dkt. Nos. 44, 45.  In reviewing the
     proposed amended complaint, the Court concludes that "it suffers from the same defects as the
26   original and does not change the legal theories underlying the motion to dismiss," and thus
     exercises its "discretion to 'consider the motion as being addressed to the amended pleading,'
27   because '[t]o hold otherwise would be to exalt form over substance.'"  _Ellipso, Inc. v. Mann_, 460
     F. Supp. 2d 99, 103 (D.D.C. 2006) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay
28   Kane, Federal Practice and Procedure § 1476 (2d ed.1990)).  Accordingly, the Court **GRANTS**
     the motion and treats the pending motions to dismiss as addressed to the amended complaint.

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

### B.      Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a plaintiff has a right as a matter of course to amend the complaint within 21 days from the date that a Rule 12(b) motion is filed.  Fed. R. Civ. P. 15(a)(1).  If this time period has passed, then a plaintiff may only amend the complaint with the opposing party's written consent or the Court's leave.  Fed. R. Civ. P. 15(a)(2).  Leave shall be freely granted by the Court when justice requires.  *Id.*; *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal citation omitted))

## III.    DISCUSSION

### A.      The City Defendants' Motion (Dkt. No. 21)

#### 1.      *Monell* Claim

Plaintiffs allege *Monell* claims against the City Defendants in their first, fourth, and fifth claims.  The City Defendants move to dismiss.

United States District Court
Northern District of California

1    "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy,

2    practice, or custom of the entity can be shown to be a moving force behind a violation of

3    constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

4    *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). "In order to

5    establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the

6    plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality

7    had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional

8    right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Id.*

9    (citation omitted).

10    A plaintiff may establish *Monell* municipal liability under § 1983 even where the

11    municipality does not expressly adopt the alleged policy. *See Webb v. Sloan*, 330 F.3d 1158, 1164

12    (9th Cir. 2003). There are three alternative ways such liability can attach: (1) "if an employee

13    commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the

14    person causing the violation has final policymaking authority;" *id.*, or (3) "where the failure to

15    train amounts to deliberate indifference to the rights of persons with whom the police come into

16    contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[I]t is not enough for a §

17    1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty.*

18    *Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Rather, the plaintiff must "demonstrate that,

19    through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."

20    *Id.* At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a

21    cause of action, but must contain sufficient allegations of underlying facts" to provide the

22    opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cnty. of*

23    *Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

24    2011)).

25                              **a.      Custom, Policy, and Practice**

26    A plaintiff may establish municipal liability by demonstrating "the constitutional tort was

27    the result of a 'longstanding practice or custom which constitutes the standard operating procedure

28    of the local government entity.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich*

1    *v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).  To establish liability on

2    the part of governmental entities under this theory, a plaintiff must show:

3                        (1) that [the plaintiff] possessed a constitutional right of which [they]
                        w[ere] deprived; (2) that the municipality had a policy; (3) that this
4                        policy "amounts to deliberate indifference" to the plaintiff's
                        constitutional right; and, (4) that the policy is the "moving force
5                        behind the constitutional violation."

6    *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal

7    quotation marks omitted).

8        Plaintiffs plead that the Defendants "maintained policies or customs of action and inaction

9    resulting in harm to [Mr. Chivrell]."  Compl. ¶ 88.  However, they do not specifically identify

10   those policies or customs.  They allege only that the Defendants "could have reasonably

11   accommodated [Mr. Chivrell's] disability through the promulgation and implementation of

12   appropriate policies and customs which prepared police officers under their command to interact

13   with persons suffering from mental disability or substance abuse."  *Id.*  This is not "enough . . . to

14   state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

15       Thus, because Plaintiffs fail to sufficiently allege the existence of policies that they claim

16   caused the constitutional violations at issue here, they fail to plead a *Monell* claim based on a

17   "custom" or "practice," or officially adopted policy.

18                                    **b.      Failure to Train**

19       "Failure to train may amount to a policy of 'deliberate indifference' if the need to train was

20   obvious and the failure to do so made a violation of constitutional rights likely."  *Dougherty*, 654

21   F.3d at 900 (citing *City of Canton*, 489 U.S. at 390).  To state a claim for failure to train, a plaintiff

22   must show (1) "the existing training program" is inadequate "in relation to the tasks the particular

23   officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons

24   with whom the police come into contact"; and (3) the inadequacy of the training "actually caused

25   the deprivation of the alleged constitutional right."  *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765,

26   770 (9th Cir. 1989) (internal citations and quotation marks omitted).

27       Plaintiffs assert that Defendants "failed to promulgate specific policies and customs and to

28   train officers under their command in the application of necessary policies, including those

United States District Court
Northern District of California

5

prescribed by the California POST, Learning Domain 37." Compl. ¶ 74. They allege that:

> [Defendants] failed adequately to train officers under their command in critical areas, including, for example:
>
> a. how and when to call for the assistance of officers or professionals with specialized training in dealing with mental illness, when possible;
>
> b. how to approach persons suffering from mental disability or substance impairment;
>
> c. how to speak to persons suffering from a from [sic] mental disability or substance impairment;
>
> d. how to interact with persons suffering from mental disability or substance impairment (including using appropriate body language and tone of voice);
>
> e. how to respect the personal space of persons suffering from mental disability or substance impairment;
>
> f. how reasonably to accommodate the disabilities of persons suffering from mental disability or substance impairment; and
>
> g. how to de-escalate, without use of force, incidents involving persons suffering from mental disability or substance impairment.

*Id.* Plaintiffs further allege that this failure to train caused the use of excessive force against Mr. Chivrell and loss of familial association with Ms. Chivrell, K.C., and D.C.

Here, the Court concludes that Plaintiffs adequately plead a *Monell* claim based on a failure to train. *See, e.g.*, *City of Canton*, 489 U.S. at 390 ("[F]ailure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."). Plaintiffs plausibly allege that the City Defendants failed to train their officers on the use of deadly force in situations involving mentally-disabled people, and that this failure to train resulted in the shooting of Mr. Chivrell. They plausibly allege that this failure to train was "'so obvious[]' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10.

The City Defendants argue that Plaintiffs' claim fails because it rests on a single incident – the shooting of Mr. Chivrell. Dkt. No. 21 at 8. The Supreme Court has "left open the possibility"

6

that "municipal liability could be triggered by evidence of a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]"  *Bd. of Cnty. Comm'rs*, 520 U.S. at 398.  "[I]n this narrow range of circumstances, the violation may be a highly predictable consequence of the failure to train and thereby justify a finding of 'deliberate indifference' by policymakers."  *Id.*  For example, in *Benavidez v. Cnty. of San Diego*, the Ninth Circuit held that the single incident exception was inapplicable where the municipality's "employees [we]re not making life-threatening decisions."  993 F.3d at 1140 (*Monell* claim alleged that municipality employees engaged in judicial deception of a juvenile court in seeking an order authorizing medical examinations of minors without notice to or consent of the parents).  However, unlike in *Benavidez*, Plaintiffs here allege that the officers were making plainly "life-threatening decisions," as evidenced by the shooting of Mr. Chivrell.  Thus, because municipal liability may be "triggered by evidence of a single violation of federal rights" when accompanied by a showing of the municipality's failure to train "its employees to handle recurring situations presenting an obvious potential for such a violation," the Court concludes that Plaintiffs plausibly allege at this stage that the shooting of Mr. Chivrell falls under the "narrow range of circumstances" covered by the single incident exception.  *Bd. of Cnty. Comm'rs*, 520 U.S. at 398.

### c.    Ratification

Plaintiffs seek to impose supervisory liability under Section 1983 against APD Police Chief Brian Ahearn based on his alleged ratification of actions taken by members of his police department.

A plaintiff may establish *Monell* liability where an "official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'"  *Price*, 513 F.3d at 966 (quoting *Ulrich*, 308 F.3d at 984-85); *see also Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *17 (N.D. Cal. Jan. 24, 2017) ("*Monell* liability can be established if the tortfeasor was an official who 'fairly represent[s] official policy' for the municipality or if such an official ratified the tortfeasor's actions." (quoting *Price*, 513 F.3d at 966)).

United States District Court
Northern District of California

1    Plaintiffs do not adequately plead a *Monell* ratification claim because they do not allege

2    that Chief Ahearn delegated authority to or ratified any unconstitutional actions of a subordinate.

3    *Price*, 513 F.3d at 966.  The complaint only alleges that Chief Ahearn was "a final policy-making

4    authority for Defendants CITY OF ARCATA and ARCATA POLICE DEPARTMENT," Compl.

5    ¶ 71, and that Chief Ahearn – along with the City or Arcata, APD, State of California, and CHP –

6    "failed to promulgate specific policies and customs and to train officers under their command in

7    the application of necessary policies," and maintained policies or customs resulting in harm to Mr.

8    Chivrell.  *Id.* ¶¶ 74, 75.  Plaintiffs' conclusory allegations simply track the legal standard and do

9    not provide sufficient detail for the Court draw the reasonable inference that Chief Ahearn is liable

10   for the misconduct alleged.  *See Sweiha*, 2019 WL 4848227, at *5 (dismissing ratification claim

11   based upon "conclusory" allegation); *Mondragon v. City of Fremont*, No. 18-CV-01605-NC, 2020

12   WL 1156953, at *4 (N.D. Cal. Mar. 10, 2020) (dismissing *Monell* ratification claim where the

13   "complaint contains vague conclusory statements rather than specific facts").

14   Accordingly, Plaintiffs do not adequately plead a *Monell* claim under a ratification theory.

15                                          *       *       *

16   The Court grants the City Defendants' motion to dismiss Plaintiffs' *Monell* claims against

17   the City of Arcata and APD under theories of custom, policy, and practice and ratification.

18   Because the Court cannot conclude that amendment would be futile, dismissal is with leave to

19   amend.  The Court denies the City Defendants' motion as to Plaintiffs' *Monell* claim under a

20   theory of failure to train.

21              **2.      Claims Against APD Police Chief Brian Ahearn**

22   The City Defendants move to dismiss Chief Ahearn from this case on the basis that he is

23   only relevant to prove a *Monell* allegation.  Dkt. No. 21 at 11.  The City Defendants argue that

24   Plaintiffs' complaint does not allege that "Chief Ahearn was present for any part of the incident"

25   and that "he is not alleged to have ever been present at the scene of the incident."  *Id.*  They claim

26   that Chief Ahearn's "only involvement in this incident . . . is that he was the Chief of Police at

27   APD when the incident occurred."  *Id.*

28   Plaintiffs' opposition brief does not contest that Chief Ahearn's only connection to the

8

United States District Court
Northern District of California

federal claims is through a *Monell* claim brought under a ratification or supervisory liability theory. Plaintiffs state that they "allege supervisory liability under 42 U.S.C. § 1983 against Chief Ahearn, in connection with the First, Fourth, and Fifth Claims," and that "because Plaintiffs sufficiently allege a § 1983 *Monell* claim against the City and Police Department, they also sufficiently allege a supervisory liability claim against Chief Ahearn." Dkt. No. 24 at 13-14. However, in addition to the first, fourth, and fifth claims, the complaint asserts five additional non-*Monell* claims against Chief Ahearn: sixth (excessive force), seventh (Tom Bane Civil Rights Act), ninth (intentional infliction of emotional distress), tenth (negligence), and eleventh (wrongful death) claims. Neither party addresses these claims in their motion papers.

Because the Court concludes that Plaintiffs do not adequately plead a *Monell* claim under a ratification or supervisory liability theory, the Court dismisses Chief Ahearn from those claims (first, fourth, and fifth claims). However, because the complaint names Chief Ahearn as a defendant in five additional non-*Monell* claims, the Court denies the City Defendants' motion to dismiss Chief Ahearn from those claims.[4]

### B.   The State Defendants' Motion (Dkt. No. 26)[5]

#### 1.   Claims Under the Rehabilitation Act and Title II of the ADA

The State Defendants move to dismiss Plaintiffs' second and third claims brought under the Rehabilitation Act and Title II of the ADA, respectively.

To state a claim of disability discrimination under Title II, a plaintiff must allege four elements:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise

---

[4] Even though the City Defendants argue that Chief Ahearn is "entitled to dismissal" with prejudice, Dkt. No. 21 at 11, they only address the *Monell* claims asserted against Chief Ahearn. Thus, because the City Defendants do not address the state claims asserted against Chief Ahearn, the Court does not address them either.

[5] The State Defendants' motion to dismiss also challenges Plaintiffs' state-law claims against the State of California and CHP as barred by the Eleventh Amendment and Cal. Gov. Code § 815. Dkt. No. 26 at 11-13. The Court need not reach these arguments because Plaintiffs agreed to dismiss those claims. Dkt. No. 27 at 2.

discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).  At the pleading stage, courts in the Ninth Circuit regularly analyze claims brought under the Rehabilitation Act and Title II of the ADA together.  *See Bouslog v. Care Options Mgmt. Plans & Supportive Servs., LLC*, 459 F. Supp. 3d 1281, 1286 (N.D. Cal. 2020) ("Because Section 504 of the Rehabilitation Act incorporates all four elements required for a claim under Title II of the ADA, if plaintiff fails to allege her claim under Title II of the ADA, she will also fail to allege her claim under the Rehabilitation Act."), *appeal dismissed*, No. 20-16144, 2020 WL 7234251 (9th Cir. Nov. 23, 2020); *see also California Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1235 (N.D. Cal. 2013) (citation omitted).

Plaintiffs adequately plead claims under the Rehabilitation Act and Title II of the ADA because they plausibly allege that the State Defendants discriminated against Mr. Chivrell due to his disability by yelling, stalking, and shooting him during their investigation.

The State Defendants seek dismissal of Plaintiffs' claims on the basis that Plaintiffs do not plead that any of the officers knew (or had any reason to know) that Mr. Chivrell was disabled.  *Id.*  But "under Rule 9(b), 'knowledge and other condition of mind may be averred generally[.]'" *Freedman v. Everest & Jennings Int'l Ltd.*, 65 F.3d 174 (9th Cir. 1995) (quoting Fed. R. Civ. P. 9(b)).  Here, Plaintiffs plausibly allege that the officers knew Mr. Chivrell was mentally disabled where their complaint alleges that Mr. Chivrell continued walking away from the officers as they followed him in their police cars, Compl. ¶¶ 34-37, and "became increasingly agitated" as the officers shouted at him, *id.* ¶ 40.

The State Defendants also argue that Plaintiffs' claims fail because they do not plead any facts showing that Mr. Chivrell was discriminated against "solely because" of his disability.  Dkt. No. 37 at 2 (quoting 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .")).  For support, the State Defendants offer evidence that does not appear

10

in Plaintiffs' complaint, exhibits, or any judicially-noticeable material.  Dkt. No. 26 at 10 n.2.

Thus, because "[a]s a general rule, 'a district court may not consider any material beyond the

pleadings in ruling on a Rule 12(b)(6) motion,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688

(9th Cir. 2001), the Court declines to consider that evidence.  Rather, drawing all reasonable

inferences in Plaintiffs' favor, as the Court must at this stage, the Court instead concludes that

Plaintiffs plausibly allege that the officers acted against Mr. Chivrell "solely by reason" of his

disability.

Accordingly, the Court denies the State Defendants' motion to dismiss Plaintiffs' second

and third claims.

### 2.   Ms. Chivrell, K.C., and D.C.'s Standing to Bring "Familial Association" Claim Under First and Fourteenth Amendments

Next, the State Defendants challenge Ms. Chivrell, K.C., and D.C.'s standing to bring a

claim for loss of familial association under the First and Fourteenth Amendments.[6]  Compl. ¶¶ 97-

102.

The Supreme Court has recognized that "choices to enter into and maintain certain intimate

human relationships must be secured against undue intrusion by the State because of the role of

such relationships in safeguarding the individual freedom that is central to our constitutional

scheme."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).  This freedom to enter into

intimate human relationships is not protected by the First Amendment, but by the Fourteenth

Amendment.  *See IDK, Inc. v. Cnty. of Clark*, 836 F.2d 1185, 1192 (9th Cir. 1988) ("In protecting

certain kinds of highly personal relationships, the Supreme Court has most often identified the

source of the protection as the due process clause of the fourteenth amendment, not the first

---

[6] The State Defendants' reply brief challenged Ms. Chivrell, K.C., and D.C.'s fifth claim for familial association under the First Amendment.  Dkt. No. 36 at 4.  Ordinarily, because the State Defendants raised this argument for the first time in their reply brief, the Court would not consider it.  *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").  However, the Court directed Plaintiffs to file a sur-reply to give them an opportunity to respond to the State Defendants' argument.  Dkt. No. 51.  On sur-reply, Plaintiffs "agree[d] that the liability analysis of a familial association claim brought under the First Amendment is the same as for a familial association claim brought under the Fourteenth Amendment[.]"  Dkt. No. 52 at 4.  Accordingly, the Court will consider the State Defendants' challenge to both claims (under the First and Fourteenth Amendments) here.

1    amendment's freedom to assemble.").

2         "[T]he freedom to enter into and carry on certain intimate or private relationships is a

3    fundamental element of liberty protected by the Bill of Rights."  *Bd. of Directors of Rotary Int'l v.*

4    *Rotary Club of Duarte*, 481 U.S. 537, 545 (1987).  These constitutional protections are not

5    restricted to relationships among family members, but instead "may take various forms, including

6    the most intimate."  *Id.*  "[T]he relationships protected by the fourteenth amendment 'are those

7    that attend the creation and sustenance of a family' and similar 'highly personal relationships.'"

8    *IDK, Inc.*, 836 F.2d at 1193 (quoting *Roberts*, 468 U.S. at 618-19) (individuals "involved in

9    procreation, raising and educating children, cohabitation with relatives, or the other activities of

10   family life" develop the deep attachments or commitments worthy of Fourteenth Amendment

11   protection).  "The factors relevant in determining whether a particular association can claim the

12   protection of the due process clause are the group's size, its congeniality, its duration, the purposes

13   for which it was formed, and the selectivity in choosing participants."  *Id.*

14        Here, Ms. Chivrell, K.C., and D.C. do not adequately plead a right to familial association.

15   Their complaint alleges only that Ms. Chivrell, K.C., and D.C. "shared a close relationship and

16   special bond with their spouse or biological father . . . which included deep attachments,

17   commitments, and distinctively personal aspects of their lives and was typical of a close familial

18   relationship."  Compl. ¶ 99.  But the mere label of "spouse" or "biological father" alone is

19   insufficient to plead a right of familial association.  *See Est. of Mendez v. City of Ceres*, 390 F.

20   Supp. 3d 1189, 1215 (E.D. Cal. 2019) (finding plaintiffs had insufficiently pled standing to bring

21   familial association claims for decedent's father, brothers, aunt, grandmother, and grandfather

22   where complaint only used perfunctory language that "he or she 'cohabitated' with [decent] and

23   'shared a close relationship and special bond' with him, and that the relationship 'presupposed

24   deep attachments, commitments, and distinctively personal aspects of their lives'").  As in *Estate*

25   *of Mendez*, the complaint's allegations are only conclusory statements that do not allow the Court

26   to draw a reasonable inference that Ms. Chivrell, K.C., and D.C. had the deep attachments and

27   commitments with Mr. Chivrell required to merit the protections of the First and Fourteenth

28   Amendments.  *See IDK, Inc.*, 836 F.2d at 1193.

United States District Court
Northern District of California

12

1    Plaintiffs argue that "the Ninth Circuit specifically recognizes relationships which possess

2    a constitutionally-protected liberty interest against unwarranted state interference[.]"  Dkt. No. 31

3    at 10.  But none of the cases they cite stand for the categorical rule Plaintiffs ask the Court to

4    apply here:  that any plaintiff automatically has standing to assert a claim for the loss of familial

5    association with the decedent because the decedent was their parent or spouse.

6        Accordingly, the Court grants the State Defendants' motion to dismiss Ms. Chivrell, K.C.,

7    and D.C.'s claims for loss of familial association under the First and Fourteenth Amendments for

8    lack of standing.  Because the Court cannot conclude that amendment would be futile, dismissal is

9    with leave to amend.

10                   **3.      Ms. Chivrell, K.C., and D.C.'s Standing to Bring Bane Act Claim**

11        "The Bane Act civilly protects individuals from conduct aimed at interfering with rights

12   that are secured by federal or state law, where the interference is carried out 'by threats,

13   intimidation or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).

14       The State Defendants challenge Ms. Chivrell, K.C., and D.C.'s standing to bring a claim

15   under the Bane Act.   Compl. ¶¶ 117-27.  Ms. Chivrell, K.C., and D.C. argue that they "allege

16   Bane Act violations based on their own injuries which are not derivative of Charles Chivrell's

17   injuries."  Dkt. No. 31 at 11.  But "the Bane Act provides no derivative liability for persons who

18   were not present and did not witness the violence or threats[.]"  *Dela Torre v. City of Salinas*, No.

19   09-CV-00626 RMW, 2010 WL 3743762, at *6 (N.D. Cal. Sept. 17, 2010); *see also Bay Area*

20   *Rapid Transit Dist. v. Superior Ct.*, 38 Cal. App. 4th 141, 144 (1995) (explaining that the Bane

21   Act "is simply not a wrongful death provision" because it only "provides for a personal cause of

22   action for the victim of a hate crime."); *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 842

23   (2004) (explaining that California's legislature expanded Bane Act to provide relief irrespective of

24   membership in a protected class or classes).

25       Ms. Chivrell, K.C., and D.C. allege that the officers' conduct, which resulted in Mr.

26   Chivrell's death, interfered with their relationship with Mr. Chivrell and thus violated the Bane

27   Act.  Because they do not allege that they were present and witnessed the violence against Mr.

28   Chivrell, the Bane Act does not provide a cause of action for them.  *See Dela Torre*, 2010 WL

13

3743762, at *6.

Accordingly, the Court grants the State Defendants' motion to dismiss Ms. Chivrell, K.C., and D.C.'s Bane Act claim. Because amendment would be futile, dismissal is without leave to amend.

### 4.    K.C. and D.C.'s Standing to Bring Wrongful Death Claim

Finally, the State Defendants challenge K.C. and D.C.'s standing to bring a wrongful death claim under California state law.

"A family member may bring a state law wrongful death claim to recover damages based on their own injuries resulting from a decedent's death. A plaintiff who brings a wrongful death claim must plead and prove standing, which is governed by California Code of Civil Procedure Section 377.60." *Stoddard-Nunez v. City of Hayward*, No. 13-CV-04490-KAW, 2015 WL 6954963, at *4 (N.D. Cal. Nov. 10, 2015) (citations omitted). Under Section 377.60, a child's standing to bring a claim for the wrongful death turns on whether that child could inherit from the decedent. *See Stennett v. Miller*, 34 Cal. App. 5th 284, 296 (2019). Therefore, wrongful death standing exists for a child – marital or nonmarital – if: "[1] a natural parent-child relationship (and thus heirship status) can be established; [2] a real or putative stepparent-stepchild relationship plus financial dependence can be established; or [3] a longstanding, financially dependent relationship can be established." *Id.* at 300.

Here, K.C. and D.C. do not establish standing to bring a wrongful death claim because they do not plausibly allege the existence of a parent-child relationship with Mr. Chivrell. The complaint alleges that K.C. and D.C. "shared a close relationship and special bond with their . . . biological father, [Mr. Chivrell], which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship[.]" Compl. ¶ 99. But simply stating that Mr. Chivrell was K.C. and D.C.'s biological father does not establish the existence of a parent-child relationship between K.C. and D.C. and Mr. Chivrell. *See Stennett*, 34 Cal. App. 5th at 303. And the remaining conclusory allegations – "deep attachments, commitments, and distinctively personal aspects of their lives" and "typical of a close familial relationship" – amount only to perfunctory and conclusory language that is likewise insufficient to

1   establish the existence of a parent-child relationship.  *See id.* at 300.  Plaintiffs must plead facts,

2   not conclusions, plausibly establishing their standing.

3          Accordingly, the Court grants the State Defendants' motion to dismiss K.C. and D.C.'s

4   wrongful death claim.  Because the Court cannot conclude that amendment would be futile,

5   dismissal is with leave to amend.

6                                            **CONCLUSION**

7          For the reasons set forth above, the Court rules as follows:

8   1.      The Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants'

9          motion to dismiss.

10         a.      The City Defendants' motion is **GRANTED** as to Plaintiffs' *Monell* claims

11                 (first, fourth, and fifth claims) with leave to amend.

12         b.      The City Defendants' motion is **GRANTED** as to Plaintiffs' first, fourth,

13                 and fifth claims against APD Chief Ahearn with leave to amend.

14         c.      The City Defendants' motion is **DENIED** as to Plaintiffs' sixth, seventh,

15                 ninth, tenth, and eleventh claims against APD Chief Ahearn.

16  2.      The Court **GRANTS IN PART** and **DENIES IN PART** the State Defendants'

17         motion to dismiss.

18         a.      The State Defendants' motion is **DENIED** as to Plaintiffs' claims under the

19                 Rehabilitation Act and Title II of the ADA.

20         b.      The State Defendants' motion is **GRANTED** as to Ms. Chivrell, K.C., and

21                 D.C.'s claims for loss of familial association under the First and Fourteenth

22                 Amendments with leave to amend.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

United States District Court
Northern District of California

15

c.      The State Defendants' motion is **GRANTED** as to Ms. Chivrell, K.C., and

D.C.'s claim under the Bane Act without leave to amend.

d.      The State Defendants' motion is **GRANTED** as to K.C. and D.C.'s

wrongful death claim with leave to amend.

If Plaintiffs can cure the pleading deficiencies described above, they must file any

amended complaint within 28 days from the date this order is filed.

**IT IS SO ORDERED.**

Dated:   8/25/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge