1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    ESTATE OF CHARLES CHIVRELL, et al.,      Case No.  22-cv-00019-HSG

8                      Plaintiffs,
                                              **ORDER GRANTING IN PART AND**
9             v.                              **DENYING IN PART THE CITY**
                                              **DEFENDANTS' MOTIONS TO**
10   CITY OF ARCATA, et al.,                  **DISMISS AND GRANTING IN PART**
                                              **AND DENYING IN PART**
11                     Defendants.            **PLAINTIFFS' MOTION TO STRIKE**

12   A. C., et al.,                           Re: Dkt. Nos. 61, 68

13                     Plaintiffs,

14            v.                              Case No.  22-cv-04804-HSG

15   CITY OF ARCATA, et al.,

16   Defendants.                             Re: Dkt. No. 26

17

18

19        Before the Court are two motions to dismiss and a motion to strike in these related cases

20   that arise from the same underlying fatal law enforcement encounter.  The first motion is filed by

21   Defendants City of Arcata, Arcata Police Department, APD Police Chief Brian Ahearn, APD

22   Sergeant Brian Hoffman, APD officer Joseph Rodes, and APD officer Evan Beechel (collectively,

23   the "City Defendants").  Dkt. No. 61.  They move to dismiss the First Amended Complaint

24   ("FAC") filed by Plaintiffs Estate of Charles Chivrell, Arielle Chivrell, K.C., and D.C.

25   (collectively, the "Estate Plaintiffs") in *Estate of Chivrell v. City of Arcata*, Case No. 22-cv-

26   00019-HSG ("*Estate of Chivrell*").  In that same case, Defendants State of California, California

27   Highway Patrol ("CHP"), CHP Officer Michael Griffin, and CHP Officer Moises Cornejo-

28   Mercado's (collectively, the "State Defendants") filed an answer to Estate Plaintiffs' FAC.  Estate

United States District Court
Northern District of California

Plaintiffs move to strike the affirmative defenses asserted in State Defendants' answer.  Dkt. No. 68.  Finally, the second motion to dismiss was filed by City Defendants in the related case, *A.C., v. City of* Arcata, Case No. 22-cv-04804-HSG ("*City of Arcata*").  City Defendants move to dismiss the FAC filed by A.C., C.C., D.C., and T.C. ("Arcata Plaintiffs").  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' motions to dismiss and **GRANTS IN PART AND DENIES IN PART** the Plaintiffs' motion to strike.

## I.   BACKGROUND

For the purpose of deciding the motions, the Court accepts as true the following facts alleged in the FAC:

In the late morning of September 9, 2021, Charles Chivrell, a 35-year-old mentally-ill man, was walking down a rural road in Humboldt County, California.  He carried a briefcase and had a firearm holstered.  In response to reports of a suspicious person with a gun, officers from both the APD and CHP were dispatched to Mr. Chivrell's location.  Upon arriving, the officers followed Mr. Chivrell in their patrol cars.  They yelled at Mr. Chivrell to stop walking but he continued to walk along the road.  Eventually, APD Sergeant Hoffman got out of his patrol car and fired several pepperball rounds at Mr. Chivrell's back, injuring him.  When he was hit, Mr. Chivrell dropped his briefcase and started to run.  CHP Officer Griffin then shot Mr. Chivrell in the back of his head, killing him.

Plaintiffs brought suit, alleging violations under 42 U.S.C. § 1983, the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and California law.  City and State Defendants moved to dismiss the complaint. The Court granted in part and denied in part those motions, and also granted Plaintiffs leave to amend their complaint.  *Estate of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1046 (N.D. Cal. 2022).

Following these proceedings, Estate Plaintiffs[1] brought an eleven claim FAC for relief: (1)

---

[1] Mr. Chivrell's Estate appears by and through Arielle Chivrell, Mr. Chivrell's surviving spouse. *Estate of Chivrell*, Dkt. No. 54 at 2.  K.C. and D. C. are minors.  Previously, the Court granted their ex parte motion appointing Arielle Chivrell, their mother and legal custodian, as their guardian ad litem.  *Id*. at Dkt. No. 53.

United States District Court
Northern District of California

excessive force (42 U.S.C. § 1983); (2) the Rehabilitation Act; (3) the Americans with Disabilities Act ("ADA"); (4) unwarranted interference with familial association under the Fourteenth Amendment (42 U.S.C. § 1983); (5) unwarranted interference with familial association under the First Amendment (42 U.S.C. § 1983); (6) excessive force under California law; (7) the Tom Bane Civil Rights Act; (8) battery; (9) intentional infliction of emotional distress; (10) negligence; and (11) wrongful death.  City Defendants move to dismiss.  *Estate of Chivrell*, Dkt. No. 61.  State Defendants do not move to dismiss Plaintiffs' FAC.  Instead, State Defendants filed an answer admitting or denying various claims in the FAC, and asserting various affirmative defenses.  Dkt. No. 66.  Plaintiffs move to strike a number of State Defendants' affirmative defenses.  Dkt. No. 68.

Arcata Plaintiffs[2] – all of whom are biological children of Charles Chivrell – appearing by and through guardians ad litem, bring three claims for relief: (1) unwarranted interference with familial association under the First Amendment (42 U.S.C. § 1983); (2) unwarranted interference with familial association under the Fourteenth Amendment (42 U.S.C. § 1983); and (3) wrongful death.  City Defendants move to dismiss.  *City of Arcata*, Dkt. No. 26.

## II.      LEGAL STANDARD

### A.      Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

---

[2] A.C., a minor, is represented by Jacquelynn Snyder, guardian ad litem, *City of Arcata*, Dkt. No. 12; C.C., D.C., and T.C., all of whom are minors, are represented by Jennifer Murrel, guardian ad litem, *City of Arcata*, Dkt. No. 13.

United States District Court
Northern District of California

1    when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

2    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3         In reviewing the plausibility of a complaint, courts "accept factual allegations in the

4    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

5    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless,

6    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

7    fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

8    2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court

9    also need not accept as true allegations that contradict matter properly subject to judicial notice or

10   allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

11        **B.      Rule 12(f)**

12        Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any

13   redundant, immaterial, impertinent, or scandalous matter." An affirmative defense is

14   insufficiently pleaded if it fails to give the opposing party "fair notice" of the nature of the

15   defense. *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). In moving to strike, a

16   party seeks "to avoid the expenditure of time and money that must arise from litigating spurious

17   issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co*., 697

18   F.2d 880, 885 (9th Cir. 1983). "Because motions to strike a defense as insufficient are disfavored,

19   they will not be granted if the insufficiency of the defense is not clearly apparent." *G & G Closed

20   Circuit Events, LLC v. Nguyen*, No. 10-cv-00168-LHK, 2010 WL 3749284, at *1 (N.D. Cal. Sept.

21   23, 2010) (internal quotation marks omitted). In ruling on a motion to strike, a "court[ ] may not

22   resolve disputed and substantial factual or legal issues . . . ." *Whittlestone, Inc. v. Handi-Craft

23   Co*., 618 F.3d 970, 973 (9th Cir. 2010); *cf. Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp.

24   1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the

25   matter to be stricken could have no possible bearing on the subject matter of the litigation.").

26   Further, "the key to determining the sufficiency of pleading an affirmative defense is whether it

27   gives plaintiff fair notice of the defense." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir.

28   2019).

United States District Court
Northern District of California

III.     **DISCUSSION**

A.     **The City Defendants' Motion to Dismiss in *Estate of Chivrell* (Dkt. No. 61)**

1.     ***Monell* Claims**

In the FAC, Plaintiffs[3] allege *Monell* claims against the City Defendants in their first, fourth, and fifth claims.  The City Defendants move to dismiss.

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)).  "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'"  *Id.* (citation omitted).

A plaintiff may establish *Monell* municipal liability under § 1983 even where the municipality does not expressly adopt the alleged policy.  *See Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).  There are three alternative ways such liability can attach:  (1) "if an employee commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the person causing the violation has final policymaking authority;" *id.*, or (3) "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."

---

[3] This section of the order deals entirely with the claims alleged in *Estate of Charles Chivrell v. City of Arcata*, Case No. 22-cv-00019-HSG.  Given that the Estate Plaintiffs are the only Plaintiffs involved in this case, this section will solely reference "Plaintiffs" to refer to the Estate Plaintiffs.  Further, all citations to the docket in this section solely reference the docket in the *Estate of Chivrell* case.

*Id.* At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In its prior order, the Court granted City Defendants' motion to dismiss Plaintiffs' *Monell* claims under theories of custom, policy, or practice and ratification, but denied the motion as to Plaintiffs' *Monell* claims under a theory of failure to train. Now, City Defendants argue that Plaintiffs' FAC realleges *Monell* claims under the dismissed theories, and again move to dismiss the custom, policy, or practice, and ratification theories. Plaintiffs contend that City Defendants have misunderstood their claim, and argue that the FAC only alleges a *Monell* claim under a theory of failure to train, and does not allege any theory of custom, policy, and practice, or ratification. Dkt. No. 64 at 7.

The Court is not entirely sure what the parties' actual dispute is: City Defendants do not seek to dismiss Plaintiffs' failure to train *Monell* theory, *see* Dkt. No. 61 at 5, and Plaintiffs allege that their "only allegations supporting *Monell* liability are limited to the failure-to-train theory," Dkt. No. 64 at 8. Plaintiffs' already-greenlighted *Monell* claim based on a failure to train theory is not disputed, and Plaintiffs concede that every other theory of *Monell* liability has not been pled. The Court will hold Plaintiffs to their concession, and confirms that the sole *Monell* theory in this case is based on a failure to train. The failure to train theory obviously implicates a municipality's training program, and whether that program is in any way inadequate. *See City of Canton*, 489 U.S. 378 at 390 (discussing that the relevant consideration in a failure to train case is whether a city's "training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy'").

Because Plaintiffs concede that their only alleged *Monell* theory is a failure to train, and the Court already found that they otherwise failed to plead a viable *Monell* claim, there is nothing to dismiss and the motion is denied.[4]

---

[4] City Defendants also seek dismissal of any alleged ratification theory in Plaintiffs' FAC. Plaintiffs again concede that they do not plead this theory in the FAC, but request leave to amend

### 2.      Bane Act Claim

Plaintiffs assert a violation of the Bane Act,  Cal. Civ. Code §52.1, in their seventh claim. Dkt. No. 54 at 23.  "The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).

Invoking the same argument as State Defendants in the prior motion to dismiss, City Defendants argue that (1) Plaintiffs do not have standing to bring a claim under this act because they were not present and did not witness the violence against Mr. Chivrell; and  (2) Plaintiffs' FAC contains "zero allegations to support the notion that any City [D]efendant used 'threats, intimidation, or coercion' to infringe on anyone's federal or state rights." Dkt. No. 61 at 7.

City Defendants' standing argument is misplaced.  This Court previously granted State Defendants' motion to dismiss Plaintiffs' Bane Act claim on standing grounds because Plaintiffs Ms. Chivrell, K.C., and D.C. alleged a Bane Act violation despite not being present or witnessing Mr. Chivrell's death, and the Bane Act "provides no derivative liability for persons who were not present and did not witness" the underlying violence or threat.  *Estate of Chivrell*, 623 F.Supp.3d at 1045 (quoting *Dela Torre v. City of Salinas*, No. 09-CV-00626 RMW, 2010 WL 3743762, at *6 (N.D. Cal. Sept. 17, 2010)).  However, after the Court granted State Defendants' motion, Plaintiffs amended their complaint to remove Ms. Chivrell, K.C., and D.C.'s Bane Act claim, leaving only the Estate's Bane Act claim.  FAC ¶ 155.  And courts in this Circuit have found that even though the Bane Act is not a wrongful death provision, a decedent's successor-in-interest has standing to assert a Bane Act claim on the decedent's behalf.  *Banks v. Mortimer*, 620 F. Supp. 3d 902, 929

---

on the basis that newly-obtained discovery revealed that City policymakers ratified the officers' unconstitutional actions.  See Dkt. No. 64 at 8.  As to City Defendants' motion, the Court denies it because, again, Plaintiffs concede that this theory is not even pled.  As to Plaintiffs' request to amend, that request is not appropriately made in an opposition brief.  To the extent Plaintiffs seek leave to amend, they need to submit a motion.  *See Steinle v. Standard Ins. Co.*, No. C 92–2753 BAC, 1994 WL 124818, *at 1 (N.D. Cal. March 21, 1994) ("The court will not grant leave to amend the complaint based merely on plaintiff's statement in its opposition to Standard's motion for summary judgment. A proposal to amend pleadings must satisfy the requirements of Federal Rule of Civil Procedure 15 and relevant case law. . . .  Plaintiff should formally move to amend if he desires to continue this action.").

1   (N.D. Cal. 2022).    The Court thus rejects City Defendants' standing argument.

2      Moving to the merits argument, City Defendants contend that the FAC contains no

3   allegations that any City Defendant used threats or intimidation to infringe on Mr. Chivrell's

4   rights.  But the Bane Act does not require the "threat, intimidation or coercion" element of the

5   claim to be "transactionally independent" from the constitutional violation alleged.  *Reese*, 888

6   F.3d at 1043.  Therefore, Plaintiffs need not allege coercion beyond the coercion inherent in the

7   underlying excessive force allegation.  Further, the FAC alleges facts supporting an inference that

8   City Defendant officers had the specific intent to violate Mr. Chivrell's constitutional rights.  *See,*

9   *e.g.*, *Banks*, 620 F. Supp. 3d at 934-35 (denying summary judgment on Bane Act claim and

10  holding that "when an officer violates 'clearly delineated and plainly applicable' constitutional

11  rights, specific intent may be shown by reckless disregard of the right at issue").  The FAC alleges

12  that officers stated they were "just going to start firing" at Mr. Chivrell without warning, FAC ¶¶

13  84, 92, and ultimately shot Mr. Chivrell with multiple rounds of pepper ball projectiles – in

14  violation of department policy – just prior to actually shooting and killing him,  *id.*  at ¶¶ 90-103.

15  At this stage, making all reasonable inferences in Plaintiffs' favor, the Bane Act claim is

16  sufficiently pled.

17     Accordingly, the Court denies the City Defendants' motion to dismiss Plaintiffs' Bane Act

18  claim (seventh claim).

19          ### 3.     Claims Against APD Police Chief Brian Ahearn

20     The City Defendants move to dismiss Chief Ahearn from this case.  Dkt. No. 61 at 7.

21              #### a.     First Cause of Action

22     Plaintiffs plead an excessive force claim against Chief Ahearn in their First Cause of

23  Action.  In seeking to dismiss Chief Ahearn from this claim, City Defendants argue that Plaintiffs'

24  complaint does not allege that "Chief Ahearn was present for any part of the incident [and that his]

25  only involvement . . . is that he was the Chief of Police at APD when the incident occurred."[5]  *Id.*

26

27  [5] City Defendants move to dismiss Chief Ahearn from Plaintiffs' *Monell* claims.  Plaintiffs
    respond that they are not bringing *Monell* claims against Chief Ahearn.  *See* Dkt. No. 64 at 10

28  ("Plaintiffs have not alleged a claim against Chief Ahearn for *Monell* liability.").  This squares
    with established law that there is no *Monell* liability for individual actors.  *See, e.g.*, *Guillory v.*

1   But a supervisor may be liable under §1983 in his individual capacity for his own culpable action

2   or inaction in the training, supervision, or control of his subordinates.  *Rodriguez v. Cnty. of Los*

3   *Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).  Here, Plaintiffs allege that Chief Ahearn was a "final

4   policymaking-authority who was responsible for the creation, implementation, and maintenance of

5   policies, customs, and procedures governing APD officers," and was a "moving force behind the

6   unreasonable and excessive force against Mr. Chivrell."  FAC ¶ 108.  Plaintiffs further allege that

7   under Chief Ahearn's supervision, the APD maintained an inadequate training program that failed

8   to equip officers with the skills they needed to appropriately handle confrontations with people

9   experiencing a mental health crisis.  *Id.* at ¶ 110.   Thus, Plaintiffs adequately plead that Chief

10   Ahearn's action or inaction in the "training, supervision, or control of his subordinates" provides a

11   basis for supervisory liability as to the excessive force claim.  Accordingly, the Court denies the

12   City Defendants' motion to dismiss Chief Ahearn from the First Cause of Action.

### b.       Fourth and Fifth Causes of Action

14        In the Fourth and Fifth Causes of Action, Plaintiffs plead claims for unwarranted

15   interference with familial association under the Fourteenth and First Amendments, respectively.

16   City Defendants move to dismiss Chief Ahearn from both claims arguing that "there are no factual

17   allegations to support that Chief Ahearn knowingly terminated or interfered with [P]laintiffs'

18   familial relationship with the decedent."  Dkt. No. 61 at 8.  Plaintiffs respond that "for the same

19   reasons that the [excessive force] claim is sufficient, so too, are the First and Fourteenth

20   Amendment claims."  Dkt. No. 64 at 11.

21        To state a claim for loss of familial association, a plaintiff must show that official conduct

22   "'shocks the conscience' in depriving family members of a liberty interest in the companionship

23   and society of a family member."  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

24   Plaintiffs' FAC alleges that Chief Ahearn "caused the termination of and interference with each

25   Plaintiff's familial relationship with Charles Chivrell, in the violation of constitutional liberty

27   *Orange Cnty.*, 731 F.2d 1379, 1382 (9th Cir. 1984) ("Monell does not concern liability of
individuals acting under color of state law*.")*; *Smith v. Cnty. of Santa Cruz*, No. 13–CV–00595
28   LHK, 2014 WL 3615492, at *11 (N.D. Cal. July 22, 2014) ("Monell liability applies only to
municipal or other local government units.").

United States District Court
Northern District of California

1    rights protected by the Fourteenth Amendment."  FAC ¶ 138.  Plaintiffs plead that Chief Ahearn's

2    "actions or inactions were motivated by evil motive or intent, involved reckless or callous

3    indifference to constitutional rights, or were wantonly or oppressively done."  *Id*. at ¶ 139.  For

4    their First Amendment claim, Plaintiffs make similar allegations, alleging that Chief Ahearn

5    "caused the termination of and interference with [Plaintiffs'] familial relationship with Charles

6    Chivrell, in violation of constitutional rights protected by the First Amendment."  *Id*. at ¶ 144.

7         These allegations do little more than recite the elements of a claim for unwarranted

8    interference.  *See Starr*, 652 F.3d at 1216 (explaining that at the pleading stage, a Plaintiff "may

9    not simply recite the elements of a cause of action, but must [detail] sufficient allegations of

10   underlying facts" to provide the opposing party with fair notice so it can defend itself).  Plaintiffs

11   do not substantiate their claim with factual allegations that support their claim that Chief Ahearn's

12   action or inaction was so egregious as to "shock the conscience."  Accordingly, the Court grants

13   City Defendants' motion to dismiss Plaintiffs' unwarranted interference with familial association

14   claims under the Fourteenth and First Amendments against Chief Ahearn.

15                    **c.      Seventh Cause of Action (Bane Act)**

16        City Defendants move to dismiss Chief Ahearn and the City with prejudice from the Bane

17   Act claim.  They argue that there are "no facts alleged showing any violence or threat of violence

18   by the City or Chief Ahearn and the allegations are inadequate to support a Section 52.1 claim

19   against them."  Dkt. No. 67 at 9.  Plaintiffs claim that Chief Ahearn, in his role as a supervisor, is

20   liable under the Bane Act.  *See* Dkt. No. 64 ("A Bane Act claim can be asserted against a

21   supervisor in the same way as for a § 1983 claim.  Accordingly, [b]ased on the allegations in the

22   complaint related to [Chief Ahearn's] actions and the allegations that [Chief Ahearn] failed to train

23   his employees and had implemented policies, practices, and customs that led to [Charles

24   Chivrell]'s death, … Plaintiff[s] ha[ve] sufficiently pled a claim against [Chief Ahearn] in his

25   individual capacity under the Bane Act.").

26        Courts are divided as to whether a supervisor may be held liable under the Bane Act.

27   *Compare San Diego Branch of Nat'l Assoc. for Advancement of Colored People v. Cnty. of San

28   Diego*, No. 16-CV-2575-JLS, 2018 WL 1382807, at *30 (S.D. Cal. March 19, 2018) ("Various

United States District Court
Northern District of California

United States District Court
Northern District of California

courts have held that supervisor liability does not apply to Bane Act claims. . . The Court agrees, and Plaintiffs have not cited to any contradictory authority or reason why the Court should depart from this precedent.") *with Shirazi v. Oweis*, No. 5:21-cv-00136-EJD, 2022 WL 445763, at *7 (N.D. Cal. February 14, 2022) ("A Bane Act claim can be asserted against a supervisor in the same way as for a § 1983 claim"). The significant weight of authority that this Court has found has held that there is no supervisory liability for Bane Act claims. *See, e.g.*, *Estate of Hennefer v. Yuba Cnty., California*, No. 2:22-cv-00389-TLN-KJN, 2023 WL 4108077, *at 7 (E.D. Cal. June 21, 2023) ("[F]ederal district courts have declined to apply supervisor liability to Bane Act claims."); *Peltz v. City of L.A.*, No. CV 22-3106-MWF2022 WL 18278417 *at 5 (C.D. Cal. December 5, 2022) ("[I]n the absence of either California state decisions, binding authority approving of the imposition of supervisorial liability under the Bane Act, or another state law basis providing a foundation for so doing, the Court declines to read supervisory liability into the Bane Act."); *Redmond v. San Jose Police Dep't*, No. 14-cv-02345-BLF, 2017 WL 5495977, *at 30 (N.D. Cal. November 16, 2017) ("The Court is unable to find any cases supporting such liability, and agrees with those federal district courts that have declined to extend supervisory liability to the Bane Act despite its common reference as the 'state equivalent' to § 1983."). *Johnson v. Baca*, 2014 No. CV 13–04496 MMM, WL 12588641, *at 16 (C.D. Cal. March 3, 2014) – Plaintiffs' leading case for the proposition that a Bane Act claim can be asserted against a supervisor – does not identify any authority specifically holding that supervisory liability is proper under the Bane Act. The *Johnson* court acknowledged that "it does not appear that the California courts have explicitly addressed this question," and reasoned that the California Supreme Court has "implicitly" held that a Bane Act claim may be asserted against a supervisor. *Id*. However, in the roughly nine years since *Johnson*, it appears that the majority of federal district courts have reached the opposite conclusion. Further, beyond their citations to *Johnson* and other cases that ultimately cite to *Johnson*, Plaintiffs provide no independent analysis as to why supervisory liability is a viable theory under the Bane Act.

The Court agrees with the weight of authority finding that there is no supervisory liability under the Bane Act. Accordingly, the Court grants the City Defendants' motion to dismiss Chief

1    Ahearn from the Bane Act claim.

2         With respect to municipal liability under the Bane Act, it is clear that a city can be held

3    vicariously liable under the Bane Act.  *See Cameron v. Craig*, 713 F.3d 1012, 1023-24 (9th Cir.

4    2013) ("California, however, has rejected the *Monell* rule and imposes liability on [municipalities]

5    under the doctrine of respondeat superior for acts of [municipal] employees."); *see* also Cal. Gov't

6    Code § 815.2(a).  Because the FAC sufficiently alleges that City officers committed a Bane Act

7    violation, the City is a proper defendant and dismissal is unwarranted.

8                    **d.    Sixth and Ninth Causes of Action (California law claims)**

9         City Defendants move to dismiss Chief Ahearn from two California state law claims:

10   Excessive Force (Sixth Cause of Action) and Intentional Infliction of Emotional Distress (Ninth

11   Cause of Action).

12        Beginning with the excessive force claim, City Defendants argue that Plaintiffs' California

13   excessive force claim should be dismissed because Article 1, Section 13 of the California

14   constitution does not create a private cause of action for damages.  Dkt. No. 67 at 8.   Plaintiffs

15   respond that though  "courts are divided on this question," the California Supreme Court has

16   suggested there should be a damages remedy for violations of Section 13 where "it recognized the

17   history of a damages action" in *Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 323-

18   24 (Cal. 2002).   Dkt. No. 95 at 1 (quoting *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 866-67 (C.D.

19   Cal. 2020).

20        Whether a plaintiff can recover money damages under a provision of the California

21   Constitution is governed by the two-step analysis set forth in *Katzberg v. Regents of Univ. of*

22   *California*, 29 Cal. 4th 300.  Federal courts have acknowledged both the district court split as to

23   whether Section 13 creates such a private right of action and the "quite complex" *Katzberg*

24   analysis needed to answer the question.  *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 1162,

25   1178 (E.D. Cal. 2019).  Here, however, City Defendants have not fully briefed the issue.  City

26   Defendants raised this argument for the first time in their reply brief.  And in the reply, City

27   Defendants just cite other nonbinding decisions finding the absence of a private right of action,

28   without addressing the authority reaching the opposite conclusion.  *See, e.g.*, *OSJ PEP Tennessee*

*LLC v. Harris*, No. CV 14–03741 DDP, 2014 WL 4988070, at * 7 (N.D. Cal. October 7, 2014)

("The California Constitution . . . appears to have been drafted against a background expectation

that common law remedies would continue to be available. . . Thus it seems quite likely that the

framers of the California Constitution expected and intended that violations of § 13 would have

had a common law tort remedy . . . Therefore, the Court, following the analytic pattern set forth by

*Katzberg*, finds that Plaintiff can claim damages for a violation of § 13); *John v. Lake County*, No.

C 18-06935 WHA, 2019 WL 859227, at *7-8 (N.D. Cal. February 22, 2019).  Given City

Defendants' failure to provide any substantive analysis and the persuasive authority cited by

Plaintiffs, the Court declines to dismiss Plaintiffs' claim at this stage.  *See Estate of Osuna*, 392 F.

Supp. 3d at 1179 ("Defendants bear the burden of proof on their motion to dismiss, and here, they

have failed to carry it."); *Shen v. Albany Unified Sch. Dist.*, No. 3:17-CV-02478-JD, 2018 WL

4053482, at *4 (N.D. Cal. Aug. 24, 2018) ("Defendants have not done [*Katzberg*] justice by

making what is effectively a passing reference to it in their briefs, and the Court declines to take it

up in that underdeveloped form.").  Accordingly, the Court denies the City Defendants' motion to

dismiss Plaintiffs' sixth claim.[6]

City Defendants argue that Chief Ahearn, Officer Rodes, and Officer Beechel should be

dismissed from Plaintiffs' Ninth Cause of Action because the FAC does not allege any facts

demonstrating that those officers exhibited outrageous conduct.  *See* Dkt. No. 67 at 9.  In response,

Plaintiffs argue that a custom, practice, or policy may constitute "outrageous conduct" giving rise

to supervisory liability.  Dkt. No. 64 at 14.  To state a cause of action for intentional infliction of

emotional distress, "the plaintiff must allege: (1) extreme and outrageous conduct by the defendant

with the intention of causing, or reckless disregard of the probability of causing, emotional

distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and

proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hailey v.*

*California Physician's Servs.*, 158 Cal. App. 4th 452, 473-74 (Cal. Ct. App. 2007) (quotation

---

[6] The denial of the motion to dismiss does not foreclose Defendants from raising and fully briefing this issue on summary judgment.

United States District Court
Northern District of California

1   omitted).  The conduct alleged must be "so extreme and outrageous as to go beyond all possible

2   bo[u]nds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

3   community." *Id*. at 474 (quotation omitted).

4          With regard to Chief Ahearn, Plaintiffs' claim must be dismissed because, again, the

5   factual allegations in the FAC fail to plausibly plead that Chief Ahearn was individually

6   responsible for the alleged intentional infliction of emotional distress or that anything he

7   personally did rose to the "extreme and outrageous" level required.  For example, no facts suggest

8   that Chief Ahearn knew about the plan that led to the shooting before it happened.  The Plaintiffs

9   do not allege any facts suggesting that Chief Ahearn sought to cause Mr. Chivrell harm, nor do

10  they allege facts detailing how his action or inaction was outrageous.  *See Ochoa v. City of San

11  Jose*, No. 21-cv-02456-BLF, 2021 WL 7627630, *at 17 (N.D. Cal. November 17, 2021) (granting

12  defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim against

13  police chief where plaintiff had not "alleged [] any direct participation by [the] [c]hief in the

14  incident" and failed to "allege [the chief] was present at the scene of the incident," and there were

15  no "allegations that [the chief] was aware of the incident until after it had occurred").

16         Plaintiffs' complaint does, however, sufficiently allege that Officer Rodes and Beechel's

17  actions were outrageous.  The complaint alleges that both Officer Rodes and Officer Beechel

18  heard another officer comment, "Guys, we're going to roll up. Get close enough. Make sure we

19  got lethal coverage.  I'm just going to unload on him."  FAC ¶ 77.  The complaint alleges that each

20  officer had an opportunity to stop their fellow officers from shooting Mr. Chivrell but failed to do

21  so.  At this stage, these allegations satisfy Plaintiffs' burden to adequately plead an intentional

22  infliction of emotional distress claim against Officers Rodes and Beechel.

23                                        *        *        *

24         The Court grants City Defendants' motion to dismiss Chief Ahearn from the Fourth, Fifth,

25  Seventh, and Ninth Causes of Action.

26         The Court denies City Defendants' motion to dismiss Chief Ahearn from the First and

27  Sixth Causes of Action.

28         The Court denies City Defendants' motion to dismiss the City of Arcata from the Seventh

United States District Court
Northern District of California

Cause of Action.

The Court denies City Defendants' motion to dismiss Officers Rodes and Beechel from the Ninth Cause of Action.

### B.     The Estate Plaintiffs' Motion to Strike in *Estate of Chivrell* (Dkt. No. 68)

In response to Estate Plaintiffs' eleven count FAC, State Defendants filed an answer asserting eighteen affirmative defenses.  Dkt. No. 66.  Following, Estate Plaintiffs move to strike ten of State Defendants' affirmative defenses.  Dkt. No. 68.

#### 1.     Affirmative Defenses

##### a.     Third Affirmative Defense: Cal. Gov't Code §§ 815.2, 820.2, and 820.8

State Defendants' Third Affirmative Defense alleges immunity under various California state statutes.  Plaintiffs move to strike these defenses on the basis that: (1) state immunities do not apply to federal civil rights actions; (2) Defendants fail to identify which defendants assert these defenses; (3) the defense is unsupported by any facts.  Dkt. No. 68 at 2-3.

First, Plaintiffs are correct that state immunities, such as those identified in the Defendants' answer, "cannot provide immunity from suit for federal civil rights violations."  *Wallis v. Spencer*, 202 F.3d 1126, 144 (9th Cir. 2000).  However, Plaintiffs assert six state-law claims to which the California immunity statutes could be applicable.  State Defendants confirm that they are not asserting state immunity against any federal law claims.  *See* Dkt. 68 at 3.  Given Defendants' confirmation and the well-established rule that state immunity does not apply to federal law claims, the Court will read the Third Affirmative Defense as applying only to the state law claims. Plaintiffs' second contention is that they are left to guess which Defendants this immunity might apply to.  But, as State Defendants point out, Plaintiffs dismissed all State Defendants from all state causes of action, except Officers Griffin and Cornejo-Mercado.  Therefore, Plaintiffs do not have to guess who is asserting the defense.  Finally, as to Plaintiffs' factual sufficiency claim, Defendants clearly claim that all the discretionary acts fall within the immunities and defenses provided under California state law. Whether the acts or omissions actually fall within the parameters of those statutes is, of course, another question.  But the true nature of the defense is

United States District Court
Northern District of California

apparent.  Accordingly, the Court denies the Plaintiffs' motion to strike State Defendants' Third Affirmative Defense.

### b.     Fifth Affirmative Defense: Cal. Gov't Code §§ 815.2 and 820.4

State Defendants' Fifth Affirmative Defense alleges state-based immunity for the acts of public employees "exercising due care."  Plaintiffs make the same arguments they did regarding the previous affirmative defense, and they fail for the same reasons. The Court denies Plaintiffs' motion to strike State Defendants' Fifth Affirmative Defense.

### c.     Sixth Affirmative Defense: Cal. Gov't Code § 818

State Defendants' Sixth Affirmative Defense alleges that the State is immune from any claim for punitive damages.  But as Plaintiffs contend, and State Defendants concede, Plaintiffs do not plead entitlement to punitive damages against the State.  Dkt. No. 68 at 4.  Accordingly, the Court grants the Plaintiffs' motion to strike State Defendants' Sixth Affirmative Defense.

### d.     Seventh Affirmative Defense: Punitive Damages: State Officers

State Defendants' Seventh Affirmative Defense asserts that State Officers (Griffin and Cornejo-Mercado) should be exempt from any punitive damages award.  Plaintiffs' contest the assertion of this defense on the same grounds as the Third Affirmative Defense, and for similar reasons, the Court finds Plaintiffs' argument unavailing.  Accordingly, the Court denies the Plaintiffs' motion to strike State Defendants' Seventh Affirmative Defense.

### e.     Eighth Affirmative Defense: Cal. Gov't Code § 820.8

State Defendants' Eighth Affirmative Defense asserts that the conduct alleged as to State Defendants' alleged actions were proximately caused by the negligence of wrongful conduct of other persons or entities.  In addition to the same pro forma objections as detailed previously, Plaintiffs argue that they plead intentional torts, and concepts of comparative fault are not applicable to state law intentional torts.  *See* Dkt. No. 68 at 6 (citing *B.B. v. County of Los Angeles*, 10 Cal. 5th 1, 29 (Cal. 2020)).  State Defendants, however, highlight that Cal. Civ. Code § 820.8 does extend to intentional torts.  Dkt. No. 69 at 5 (discussing that *B.B. v. County of Los Angeles* does not concern immunity under § 820.8); *cf. Clarke v.* Upton, No. CV-F-07-888 OWW, 2008 WL 2025079, at *16 ("The 1963 California Tort Claims Act extends immunity to public

employees even if discretion is abused by them, and even if their act is malicious and without probable cause, or is an intentional tort. (See Gov. Code §§ 820.2, 821., 822.2, 820.4, 820.6 and 820.8.")).  In their reply, Plaintiffs abandon their initial argument.  Accordingly, the Court denies the Plaintiffs' motion to strike State Defendants' Eight Affirmative Defense.

### f.      Twelfth Affirmative Defense: Statutory Proscriptions Against Interference with Peace Officers

State Defendants' Twelfth Affirmative Defense asserts that Mr. Chivrell had a duty to refrain from obstructing or evading peace officers, and by not doing so, Mr. Chivrell was in violation of several California statutes.  Plaintiffs' main argument is that State Defendants merely cite to a series of statutory provisions but allege inadequate factual support to give Plaintiffs fair notice of the bases for the defense.  Dkt. No. 68 at 8.  But State Defendants do not merely cite the relevant statutes: instead, they allege that Mr. Chivrell resisted a police officer; assaulted an officer; assaulted an officer with a deadly weapon; and resisted arrest.  Dkt. No. 66 at 12.  In addition to the statutes listed, these factual allegations give Plaintiffs fair notice of the bases for State Defendants' defense.  Accordingly, the Court denies the Plaintiffs' motion to strike State Defendants' Twelfth Affirmative Defense.

### g.      Thirteenth Affirmative Defense: Use of Reasonable Force

State Defendants' Thirteenth Affirmative Defense alleges state-based immunity for officer's use of reasonable force.  Plaintiffs repeat the same arguments they made regarding other affirmative defenses, *see, e.g.*, *Third Affirmative Defense*, and on the same basis, the Court denies Plaintiffs' motion to strike State Defendants' Thirteenth Affirmative Defense.

### h.      Fourteenth Affirmative Defense: Reasonable Detention

State Defendants' Fourteenth Affirmative Defense alleges that officers reasonably detained Mr. Chivrell.  Plaintiffs argue that they did not plead a false detention or false arrest claim, and therefore, State Defendants' affirmative defense is immaterial.  State Defendants argue that a reasonable belief in probable cause for an arrest is grounds for summary judgment based on qualified immunity for illegal search and seizure.  Dkt. No. 69 at 7 (citing *Collins v. City of Sacramento*, 328 F. App'x 361, 363 (9th Cir. 2009)).  An affirmative defense is immaterial if it

has no essential or important relationship to the claim for relief pleaded.  *Barnes v. At & T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D. Cal. 2010).  State Defendants sufficiently contend that this issue is critical to their qualified immunity defense and explain why.  Accordingly, the Court grants the Plaintiffs' motion to strike State Defendants' Fourteenth Affirmative Defense.

### i.      Sixteenth Affirmative Defense: Self Defense

State Defendants' Sixteenth Affirmative Defense alleges self-defense or defense of others.  Plaintiffs again make the same pro forma arguments they made with other affirmative defenses, *see, e.g.*, *Third Affirmative Defense*, and on the same basis, the Court denies Plaintiffs' motion to strike State Defendants' Sixteenth Affirmative Defense.

### j.      Eighteenth Affirmative Defense: Self Defense

State Defendants' Sixteenth Affirmative Defense alleges self-defense or defense of others.  Plaintiffs again make the same pro forma arguments they made with other affirmative defenses, *see, e.g.*, *Third Affirmative Defense*, and on the same basis, the Court denies Plaintiffs' motion to strike State Defendants' Eighteenth Affirmative Defense.

## C.      The City Defendants' Motion to Dismiss in *City of Arcata* (Dkt. No. 26)

In this related case, Plaintiffs[7] – biological children of Mr. Chivrell – through guardians ad litem bring a three-claim amended complaint ("FAC") against City Defendants.  City Defendants move to dismiss Plaintiffs' *Monell* claims and move to dismiss Chief Ahearn from the two claims alleged against him.

### 1.      *Monell* Claims

Arcata Plaintiffs allege *Monell* claims against the City Defendants in their first and second claims.  The City Defendants move to dismiss.

A plaintiff may establish municipal liability by demonstrating "the constitutional tort was

---

[7] This section of the order deals entirely with the claims alleged in *A.C., et al., v. City of Arcata*, Case No. 22-cv-4804-HSG.  Given that the Arcata Plaintiffs are the only Plaintiffs involved in this case, this section will solely reference "Plaintiffs" to refer to the Arcata Plaintiffs who include A.C., C.C., D.C., and T.C.  Further, all citations to the docket in this section solely reference the docket in the *City of Arcata* case.

United States District Court
Northern District of California

the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).  To establish liability on the part of governmental entities under this theory, a plaintiff must show:

> (1) that [the plaintiff] possessed a constitutional right of which [they] w[ere] deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and, (4) that the policy is the "moving force behind the constitutional violation."

*Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

Plaintiffs plead that City Defendants "failed to promulgate specific policies and customs and to train officers under their command in the application of necessary policies, including those prescribed by the California POST, Learning Domain 37 ('People with Disabilities')."  FAC. ¶ 128.  The FAC alleges that City Defendants did not adhere to this policy, and had a longstanding custom of disregarding Learning Domain 37.  Plaintiffs further allege that City Defendants violated the policies and procedures required by California Post and the APD policy manual, including Policy 370, which specifies the protocol for communicating with persons with disabilities, and Policy 466, which details how to properly engage in crisis intervention.  FAC. ¶ 64.  Plaintiffs' FAC enumerates several specific policies that were implemented or not adhered to which amounted to deliberate indifference of Mr. Chivrell's constitutional rights, and were the moving force behind the constitutional violation he suffered.  By identifying specific policies and the alleged custom, policy, or practice violations, Plaintiffs' FAC alleges enough facts "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Accordingly, the Court denies the City Defendants' motion to dismiss Plaintiff's *Monell* claims under a theory of custom, policy, or practice.

In addition to the custom, policy, or practice theory, Plaintiffs also allege a "failure to train" *Monell* theory.  "Failure to train may amount to a policy of 'deliberate indifference' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely."

United States District Court
Northern District of California

1   *Dougherty*, 654 F.3d at 900 (citing *City of Canton*, 489 U.S. at 390).  To state a claim for failure to

2   train, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the

3   tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to

4   the rights of persons with whom the police come into contact"; and (3) the inadequacy of the

5   training "actually caused the deprivation of the alleged constitutional right."  *Merritt v. Cnty. of*

6   *Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted).

7        Plaintiffs assert that Defendants "failed to promulgate specific policies and customs and to

8   train officers under their command in the application of necessary policies, including those

9   prescribed by the California POST, Learning Domain 37."  FAC. ¶ 128.  Like the FAC in *Estate*

10  *of Chivrell*, Arcata Plaintiffs allege that:

11       [Defendants] failed adequately to train officers under their command
    in critical areas, including, for example:

12

13       a. how and when to call for the assistance of officers or
    professionals with specialized training in dealing with mental
14  illness, when possible;

15       b. how to approach persons suffering from mental disability
    or substance impairment;

16
         c. how to speak to persons suffering from a from [sic] mental
17  disability or substance impairment;

18       d. how to interact with persons suffering from mental
    disability or substance impairment (including using
19  appropriate body language and tone of voice);

20       e. how to respect the personal space of persons suffering from
    mental disability or substance impairment;

21       f. how reasonably to accommodate the disabilities of persons
22  suffering from mental disability or substance impairment; and

23       g. how to de-escalate, without use of force, incidents involving
    persons suffering from mental disability or substance
24  impairment.

    *Id.*  Plaintiffs further allege that this failure to train caused the use of excessive force against Mr.

25  Chivrell and loss of familial association.

26       As decided in this Court's first order in *Estate of Chivrell*, the Court concludes that

27  Plaintiffs adequately plead a *Monell* claim based on a failure to train.  *See, e.g.*, *City of Canton*,

28

1   489 U.S. at 390 ("[F]ailure to provide proper training may fairly be said to represent a policy for

2   which the city is responsible, and for which the city may be held liable if it actually causes

3   injury.").  Plaintiffs plausibly allege that the City Defendants failed to train their officers on the

4   use of deadly force in situations involving mentally-disabled people, and that this failure to train

5   resulted in the shooting of Mr. Chivrell.  They plausibly allege that this failure to train was "'so

6   obvious[]' that failure to do so could properly be characterized as 'deliberate indifference' to

7   constitutional rights."  *Id.* at 390 n.10.

8           The City Defendants reiterate an argument the Court already rejected: Plaintiffs' claim

9   fails because it rests on a single incident – the shooting of Mr. Chivrell.  Dkt. No. 26 at 6.  But as

10  explained in *Estate of Chivrell*, the Supreme Court has "left open the possibility" that "municipal

11  liability could be triggered by evidence of a single violation of federal rights, accompanied by a

12  showing that the municipality has failed to train its employees to handle recurring situations

13  presenting an obvious potential for such a violation[.]"  *Bd. of Cnty. Comm'rs*, 520 U.S. at 398.

14  "[I]n this narrow range of circumstances, the violation may be a highly predictable consequence of

15  the failure to train and thereby justify a finding of 'deliberate indifference' by policymakers."  *Id.*

16  For example, in *Benavidez v. Cnty. of San Diego*, the Ninth Circuit held that the single incident

17  exception was inapplicable where the municipality's "employees [we]re not making life-

18  threatening decisions."  993 F.3d 1134, 1140 (9th Cir. 2021) (*Monell* claim alleged that

19  municipality employees engaged in judicial deception of a juvenile court in seeking an order

20  authorizing medical examinations of minors without notice to or consent of the parents).

21  However, unlike in *Benavidez*, Plaintiffs here allege that the officers were making plainly "life-

22  threatening decisions," as evidenced by the shooting of Mr. Chivrell.  Thus, because municipal

23  liability may be "triggered by evidence of a single violation of federal rights" when accompanied

24  by a showing of the municipality's failure to train "its employees to handle recurring situations

25  presenting an obvious potential for such a violation," the Court concludes that Plaintiffs plausibly

26  allege at this stage that the shooting of Mr. Chivrell falls under the "narrow range of

27  circumstances" covered by the single incident exception.  *Bd. of Cnty. Comm'rs*, 520 U.S. at 398.

28          Finally, Plaintiffs seek to impose supervisory liability under Section 1983 against APD

United States District Court
Northern District of California

1    Police Chief Brian Ahearn based on his alleged ratification of actions taken by members of his

2    police department.  Plaintiffs allege that Chief Ahearn "implicitly ratified the conduct of his

3    subordinates in relation to the conduct alleged by refusing to investigate the officer-involved death

4    of Charles Chivrell."  FAC ¶ 125.  Further, Plaintiffs allege that "in response to APD's receipt of

5    citizens' complaints [Chief] Ahearn indefinitely suspended the investigation" in violation of

6    California law. *Id*. at ¶ 126

7        A plaintiff may establish *Monell* liability where an "official with final policy-making

8    authority 'delegated that authority to, or ratified the decision of, a subordinate.'"  *Price*, 513 F.3d

9    at 966 (quoting *Ulrich*, 308 F.3d at 984-85); *see also Bagley v. City of Sunnyvale*, No. 16-CV-

10   02250-LHK, 2017 WL 344998, at *17 (N.D. Cal. Jan. 24, 2017) ("*Monell* liability can be

11   established if the tortfeasor was an official who 'fairly represent[s] official policy' for the

12   municipality or if such an official ratified the tortfeasor's actions." (quoting *Price*, 513 F.3d at

13   966)). Defendants argue that "the mere failure to discipline an officer does not rise to the level of

14   ratification." Dkt. No. 34 at. 5.

15       Plaintiffs adequately plead a *Monell* ratification theory.  Acceptance of a "policy or custom

16   may be inferred if, after [constitutional violations occurred], ... officials took no steps to reprimand

17   or discharge the[ir subordinates], or if they otherwise failed to admit the [subordinates'] conduct

18   was in error." *McRorie*, 795 F.3d at 784.  By alleging that Chief Ahearn refused to investigate the

19   officer involved shooting, Plaintiffs allege that Ahearn approved of his subordinate officers'

20   actions. *See  Carl*, 382 F.3d at 987.   The Court therefore denies City Defendants' motion to

21   dismiss Plaintiffs' ratification theory of *Monell* liability.

22                                    *        *        *

23       The Court denies City Defendants' motion to dismiss Plaintiffs' *Monell* claims.

24             **2.      Claims Against APD Police Chief Brian Ahearn**

25       The City Defendants move to dismiss Chief Ahearn from the Second Cause of Action

26   (Unwarranted Interference with Familial Association) and the Third Cause of Action (Wrongful

27   Death).  Dkt. No. 26 at 8.

28       *//*

United States District Court
Northern District of California

### a.      Unwarranted Interference with Familial Association Under Fourteenth Amendment

The Fourteenth Amendment protects familial relationships from unwarranted state interference.  *Thurston v. Santa Rosa Police Dep't*, No. C 08–1115 CRB (PR), 2009 WL 981330, at *1 (N.D. Cal. April 13, 2009).  This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers.   *Moreland v. Las Vegas Metro. Police Dep't*, 159 F. 3d 365, 371 (9th Cir. 1998).  Under the Fourteenth Amendment, "only official conduct that 'shocks the conscience' is cognizable as a due process violation."  *Alford v. Humbolt Cnty*, 785 F. Supp. 2d 867, 880 (N.D. Cal. 2011).

In seeking to dismiss Plaintiffs' claim, Defendants argue that "[t]here are no factual allegations to support that Chief Ahearn knowingly terminated or interfered with the [p]laintiffs' familial relationship with the decedent.  Aside from his position within the APD, the FAC offers no facts that Chief Ahearn was involved in this incident."  Dkt. No. 26 at 8.

The Court agrees.  Plaintiffs' FAC alleges that Chief Ahearn "caused the termination of and interference with each Plaintiff's familial relationship with Charles Chivrell, in the violation of constitutional liberty rights protected by the Fourteenth Amendment."  FAC ¶ 148.  Plaintiffs plead that Chief Ahearn's "actions or inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done."  *Id*. at ¶ 149.  For the same reasons discussed in section III.A.3.b. earlier, the Court finds that these allegations include no supporting facts, and do little more than recite the elements of a claim for unwarranted interference under the Fourteenth Amendment.  *See Starr*, 652 F.3d at 1216 (explaining that at the pleading stage, a plaintiff "may not simply recite the elements of a cause of action, but must [detail] sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself).  Accordingly, the Court grants City Defendants' motion to dismiss Plaintiffs' unwarranted interference with familial association claim against Chief Ahearn.

### b.      Wrongful Death Under Cal. Civ. Code §377.60

To successfully state a claim for wrongful death in California, a plaintiff must allege "(1) a wrongful act or neglect on the part of one or more persons that (2) causes (3) the death of another person." *Machado v. Nguyen*, No. 12-CV-06501-JSC, 2014 WL 2795474, at *8 (N.D. Cal. June

19, 2014) (citing *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 390 (1999)).  A wrongful death claim fails if it does not allege the "manner in which [the defendant] was negligent, or how any such negligence caused or contributed in any manner to any specified injury." *Bem v. Stryker Corp.*, No. C 15-2485 MMC, 2015 WL 4573204, at *1 (N.D. Cal. July 29, 2015).

California Government Code section 820.8 provides that "a public employee is not liable for an injury caused by the act or omission of another person." No facts show that Chief Ahearn was present or participated in the officers' response to Mr. Chivrell or the use of force that ultimately led to his death.  Plaintiffs make no argument explaining why this general rule should be inapplicable.  Accordingly, the Court grants the motions to dismiss Arcata Plaintiffs' wrongful death claim against Chief Ahearn.

## IV.   CONCLUSION

For the reasons set forth above, the Court rules as follows:

1.   The Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' motion to dismiss (Dkt. No. 61) in *Estate of Chivrell*, Case No. 22-cv-00019-HSG.

    a.   The City Defendants' motion is **GRANTED** as to Plaintiffs' fourth, fifth, seventh, and ninth claims against APD Chief Ahearn with leave to amend.

    b.   The City Defendants' motion is **DENIED** as to Plaintiffs' *Monell* claims (first, fourth, and fifth claims).

    c.   The City Defendants' motion is **DENIED** as to Plaintiffs' first and sixth claims against APD Chief Ahearn.

    d.   The City Defendants' motion is **DENIED** as to Plaintiffs' seventh claim against the City.

    e.   The City Defendants' motion is **DENIED** as to Plaintiffs' ninth claim against APD Officers Beechel and Rodes.

2.   The Court **GRANTS IN PART** and **DENIES IN PART** the Plaintiffs' motion to strike (Dkt. No. 68) in *Estate of Chivrell*, Case No. 22-cv-00019-HSG.

    a.   The Estate Plaintiffs' motion is **GRANTED** as to State Defendants' sixth affirmative defense without leave to amend given the parties' agreement

United States District Court
Northern District of California

24

1    that no punitive damages claim is pled against those Defendants.

2        b.    The Estate Plaintiffs' motion is **DENIED** as to State Defendants' third,

3            fifth, seventh, eighth, twelfth, thirteenth, fourteenth, sixteenth, and

4            eighteenth affirmative defenses.

5    3.    The Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants'

6        motion to dismiss (Dkt. No. 26) in *City of Arcata*, Case No. 22-cv-04804-HSG.

7        a.    The City Defendants' motion is **GRANTED** as to Plaintiffs' second and

8            third claims against APD Chief Ahearn.

9        b.    The City Defendants' motion is **DENIED** as to Plaintiffs' *Monell* claims

10           (first and second claims).

11   If Plaintiffs can cure the pleading deficiencies described above, they must file any

12   amended complaint or answer within 21 days from the date this order is filed.

13    The Court SETS a telephonic case management conference on October, 24 2023, at 2:00

14   p.m., and DIRECTS the parties to submit a joint case management statement by October 17, 2023.

15   All counsel shall use the following dial-in information to access the call:

16   Dial-In:  888-808-6929;

17   Passcode:  6064255

18   For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where

19   at all possible, parties shall use landlines.  Parties should be prepared to discuss how to move this

20   case forward efficiently.

21   **IT IS SO ORDERED.**

22

23   Dated:    9/6/2023

24

25

26   HAYWOOD S. GILLIAM, JR.
     United States District Judge

27

28