Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:    (916) 443-6911
Facsimile:    (916) 447-8336
E-Mail:       mark@markmerin.com
              paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF CHARLES CHIVRELL,
ARIELLE CHIVRELL, K.C., and D.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ESTATE OF CHARLES CHIVRELL, ARIELLE CHIVRELL, K.C., and D.C., <br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ARCATA, ARCATA POLICE DEPARTMENT, BRIAN AHEARN, BRIAN HOFFMAN, JOSEPH RODES, EVAN BEECHEL, STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, MICHAEL GRIFFIN, MOISES CORNEJO MERCADO, and DOE 1 to 20,<br><br>Defendants. | Case No. 4:22-cv-00019-HSG<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**<br><br>[Re: ECF No. 112] |

## I. INTRODUCTION

Plaintiffs respond to the Court's Order for supplemental briefing "identifying and discussing the cases the parties contend either did or did not clearly establish at the time of the incident that Officer Hoffman[']s actions were unconstitutional, under the qualified immunity standards articulated by the Supreme Court." ECF No. 112.

## II. ARGUMENT

### A.     QUALIFIED IMMUNITY DOES NOT APPLY

The qualified immunity analysis involves "two questions: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 627 (9th Cir. 2022) (internal citation omitted).[1] "Qualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) (citation omitted); *Slater v. Deasey*, 789 F. App'x 17, 21 (9th Cir. 2019); *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005); *Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir. 1988); *see also Crawford-El v. Britton*, 523 U.S. 574, 587 (1998); *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *Gomez v. Toledo*, 446 U.S. 635, 639–41 (1980).

#### 1.     Constitutional Violation

Plaintiffs' previously-filed briefing sets out the undisputed facts related to Hoffman's violation of Chivrell's Fourth Amendment right against excessive force. *See* ECF No. 92, 98. For purposes of this supplemental briefing—and consistent with the Court's instruction to "identify[] and discuss[] the cases [which] clearly establish at the time of the incident that Officer Hoffman[']s actions were unconstitutional," ECF No. 120—Plaintiffs assume familiarity with the undisputed facts.

---

[1] Plaintiffs reserve the right to challenge qualified immunity on the basis that it is unconstitutional because: (1) qualified immunity is a judge-made doctrine "absent from the text of § 1983," *Estate of Aguirre*, 29 F.4th at 627, and without support in the history of § 1983, *Baxter v. Bracey*, 140 S. Ct. 1862, 1864 (2020) (Thomas, J., dissenting); and (2) "the Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act *expressly included such language*," *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (Willett, J., concurring).

1

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

### 2. Clearly Established Law

"For the unlawfulness of an officer's conduct to be clearly established, it must be the case that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing was unlawful. In other words, existing law must have placed the unconstitutionality of the officer's conduct beyond debate." *Polanco v. Diaz*, 76 F.4th 918, 930 (9th Cir. 2023) (internal citations & alterations omitted). "But [an officer] is not entitled to qualified immunity simply because the very action in question has not previously been held unlawful." *See*, *e.g.*, *Sandoval v. County of San Diego*, 985 F.3d 657, 680 (9th Cir. 2021) (internal citation & alteration omitted); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) ("need not be a case directly on point"); *Pike v. Hester*, 891 F.3d 1131, 1141 (9th Cir. 2018) ("exact factual match is not required"); *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1017 n.16 (9th Cir. 2017) ("case on all fours" not required). Rather, "[the Ninth Circuit] routinely rel[ies] on the intersection of multiple cases when holding that a constitutional right has been clearly established," where "[t]his approach is required by the Supreme Court's instruction that qualified immunity is improper where a legal principle has a sufficiently clear foundation in then-existing precedent." *Polanco*, 76 F.4th at 930 n.8 (internal citations & alterations omitted). "Whether a constitutional right is clearly established is purely a question of law for the court to decide," and it must "draw on [its] full knowledge of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Gordon v. County of Orange*, 6 F.4th 961, 968–69 (9th Cir. 2021) (citing *Elder v. Holloway*, 510 U.S. 510, 511, 516 (1994)); *see also Brown v. Grinder*, 2019 U.S. Dist. LEXIS 10236, at *41 n.19 (E.D. Cal. Jan. 22, 2019).

Accordingly, in this case, the intersection of multiple cases, including those involving uses of projectiles against non-threatening and mentally ill subjects who have committed only minor offenses, clearly established that Hoffman's shooting pepperball projectiles at Chivrell's back as he walked away from the officers was a violation of the Fourth Amendment at the time it occurred. *See*, *e.g.*, *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001) ("Every police officer should know that it is objectively unreasonable to shoot—even with [less-lethal rounds]—an unarmed man who: has committed no serious offense, is mentally or emotionally disturbed, has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the

2

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

safety of the officer or other individuals."); *Nelson v. City of Davis*, 685 F.3d 867, 885–86 (9th Cir. 2012) ("In light of our holding in *Deorle*, a reasonable officer would have known that firing projectiles, including pepperballs, in the direction of individuals suspected of, at most, minor crimes, who posed no threat to the officers or others, and who engaged in only passive resistance, was unreasonable.").

> Under the factual circumstances present in this case, a reasonable officer would have been on notice that both the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals who had committed at most minor misdemeanors, and the release of pepper spray in the area occupied by those individuals, would constitute unreasonable force in violation of the Fourth Amendment. . . . [T]he unreasonableness of their conduct would have been known to any reasonable officers. . . . [T]here was no exigency motivating the officers' actions and they were aware at the time of the shooting that they were using force that might lead to serious injury against non-threatening individuals who had committed no serious crime.

*Nelson*, 685 F.3d at 886.

### a. Pepperball Projectiles

It was clearly established that a "pepperball projectile" is "an object that combines the shock of kinetic impact (similar to paintballs) with the sensory discomfort associated with pepper spray." *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012) (internal citation & alteration omitted); *see also Puente v. City of Phoenix*, 2022 U.S. Dist. LEXIS 21489, at *38 (D. Ariz. Feb. 7, 2022) (categorizing pepperball projectiles as "intermediate force"). Further, "the use of pepper spray is [not] a minimal intrusion, due to the immediacy and uncontrollable nature of the pain involved." *Nelson*, 685 F.3d at 878 (internal citations omitted). "Pepper spray is *designed* to cause intense pain, and inflicts a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx, as well as disorientation, anxiety, and panic." *Young v. County of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (internal citations omitted).

Even without "binding precedent that has specifically addressed the use of pepperball projectiles," "an officer is not entitled to qualified immunity on the ground that the law is not clearly established every time a novel method is used to inflict injury." *Nelson*, 685 F.3d at 884 (internal citation & alteration omitted). "Although the pepperball projectile is a relatively new mechanism by which a combination of concussive impact and chemical irritants can be applied to individuals by law enforcement, the type of pain inflicted is the same or greater than that caused by weapons that [the Ninth

3

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

Circuit] has already recognized constitute excessive force when applied individually under similar circumstances. Thus, just as [] prior [Ninth Circuit] cases provided notice to all reasonable officers that targeting [subjects] with a projectile weapon with concussive force that could cause serious physical injury *or* targeting them with pepper spray was unreasonable under the Fourth Amendment, [Ninth Circuit] precedents make it equally clear that utilizing a weapon against [the subject] that combined *both* of these forms of force amounted to a constitutional violation." *Id*. at 884–85.

### b. *Minor Offenses*

It was clearly established that minor offenses are "not 'severe' within the meaning of the *Graham* analysis"—for example, "trespassing and obstructing a police officer," "brandishing a hatchet and crossbow at police officers," and "threatening to 'kick [an officer's] ass.'" *See*, *e.g.*, *Glenn v. Washington County*, 673 F.3d 864, 874 n.9 (9th Cir. 2011) (collecting cases); *Young v. County of Los Angeles*, 655 F.3d 1156, 1164–65 (9th Cir. 2011); *see also Silva v. Chung*, 740 F. App'x 883, 886 (9th Cir. 2018) ("walking in the middle of the road" was not a "serious crime"); *Briceno v. Williams*, No. 21-55624, 2022 U.S. App. LEXIS 13771, at *5 (9th Cir. May 20, 2022) ("running from [an officer], even if a misdemeanor under California Penal Code section 148(a)(1), was not a serious crime").

### c. *Armed But Non-Threatening Subjects*

It was clearly established that, "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). "Conversely, if the suspect *doesn't* reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him…" *See*, *e.g.*, *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) ("Did the police see [the subject] reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't."); *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017) (the subject's weapon "never rose to a position that posed any threat to the officers"); *Longoria v. Pinal County*, 873 F.3d 699, 711 (9th Cir. 2017) ("[the subject] was not holding a gun and [] he did not assume a 'shooter's stance'"); *Harris v. Roderick*, 126 F.3d 1189, 1202 (9th Cir. 1997) (decision to shoot "any adult male armed with a weapon in the vicinity … , regardless of whether he was threatening the officers or any other persons," was a clearly established constitutional violation); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th

4

Cir. 1991) ("[the subject] did not point the gun at the officers and apparently was not facing them when they shot him"). Also, "[i]t is clearly established law that shooting a fleeing suspect in the back violates the suspect's Fourth Amendment rights." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018).[2]

### d. No Exigency

It was clearly established that, when the government interest "do[es] not support a need for force, *any* force used is constitutionally unreasonable." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003)); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) ("force is only justified when there is a need for force"); *see also Brown v. County of San Bernardino*, No. 21-56357, 2023 U.S. App. LEXIS 2941, at *3 (9th Cir. Feb. 7, 2023). Specifically, "[l]ess than deadly force, like deadly force, may not be used without sufficient reason…" *Deorle v. Rutherford*, 272 F.3d 1272, 1284–85 (9th Cir. 2001); *see also id*. 1281 (using less-lethal force against a subject "to prevent [him] from passing [the officer] and thereby posing a menace to [the officer], the public and other officers" was not objectively reasonable). Thus, an officer's "[a] desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *See*, *e.g.*, *Deorle*, 272 F.3d at 1281; *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012) ("absence of any actual exigency" insufficient); *Winterrowd v. Nelson*, 480 F.3d 1181, 1185 (9th Cir. 2007) ("generalized concerns, standing alone, cannot justify the use of force"); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) ("speculation" insufficient).

### e. Passively Resisting Subjects

It was clearly established that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). For example, a subject who "did not attack the officers, or anyone else," "did [not] threaten to do so at any point while officers were on the scene," "took no threatening actions (other than noncompliance with shouted orders)," but "remained in

---

[2] These cases involved the use of deadly force in response to armed subjects but, nonetheless, the Ninth Circuit has clearly established that "[l]ess than deadly force, like deadly force, may not be used without sufficient reason…" *Deorle v. Rutherford*, 272 F.3d 1272, 1284–85 (9th Cir. 2001).

5

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

possession of [a weapon] despite officers' commands to put it down," engaged in "less than active resistance, not warranting use of [less-lethal force]." *Glenn v. Washington County*, 673 F.3d 864, 875 (9th Cir. 2011). Additionally, a subject's "bizarre behavior"—such as "[s]houting gibberish"—"is a far cry from actively struggling with an officer attempting to restrain and arrest an individual." *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). Further, a subject's failure to "comply with [officers'] instructions," including "walk[ing] away from the officers," has been categorized as not "actively attempt[ing] to evade arrest by flight." *Silva v. Chung*, 740 F. App'x 883, 885 (9th Cir. 2018).

### f. Mentally Ill Subjects

It was clearly "establishe[d] that if officers believe a suspect is mentally ill, they should make a greater effort to take control of the situation through less intrusive means." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 n.9 (9th Cir. 2018) (internal citation & alterations omitted). This "reasoning applies to intermediate levels of force. . . . The government has an important interest in providing assistance to a person in need of psychiatric care; thus, the use of force that may be justified by that interest necessarily differs both in degree and in kind from the use of force that would be justified against a person who has committed a crime or who poses a threat to the community." *See*, *e.g.*, *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010); *Glenn v. Washington County*, 673 F.3d 864, 875–76 (9th Cir. 2011). For example, as explained in *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), where an officer shot a mentally disturbed subject with a less-lethal projectile, as the subject threatened to "kick [the officer's] ass," carried a bottle of lighter fluid, and "roamed about the area and shouted in an irrational manner, but had not harmed or attempted to harm anyone":

> The problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense. In the former instance, increasing the use of force may, in some circumstances at least, exacerbate the situation; in the latter, a heightened use of less-than-lethal force will usually be helpful in bringing a dangerous situation to a swift end. In the case of mentally unbalanced persons, the use of officers and others trained in the art of counseling is ordinarily advisable, where feasible, and may provide the best means of ending a crisis. Even when an emotionally disturbed individual is "acting out" and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual. . . . [T]he situation here was far from that of a

6

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

> lone police officer suddenly confronted by a dangerous armed felon threatening immediate violence: [the subject] was eventually charged only with the relatively minor crime of obstructing the police in their effort to subdue him. [The officer who shot the less-lethal round] and a host of other officers were at the scene for over half an hour before [he] shot the emotionally disturbed [subject]. [The officer] had had an opportunity to observe [the subject] for a considerable period of time prior to firing at him. He also had the opportunity to consult with his superiors concerning the tactics to be employed. Moreover, [the officer] possessed a clear line of escape from the position he assumed and a police roadblock or buffer zone had been established behind him. [The officer] and the other officers were awaiting the arrival of skilled negotiators, trained to persuade individuals like [the subject] to submit peacefully. The negotiating team had left the station and was on its way to the scene. Nevertheless, [the officer] contemplated shooting [the subject] with the "less lethal" round during the entire time [the subject] was walking in his direction from the road-block. In sum, with knowledge of all the relevant circumstances, [the officer] made a calculated and deliberate decision to shoot [the subject] when [the subject] reached a particular point in his peregrinations: and that is precisely what he did.

*Id*. at 1282–83 (internal citation & fn. omitted).

### g. *Pre-Force Warnings*

It was clearly established that "warnings should be given, when feasible, if the use of force may result in serious injury…" *See*, *e.g.*, *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001) ("[Ninth Circuit] cases demonstrate that officers provide warnings, where feasible, even when the force used is less than deadly."). Even where "a warning to [the subject] may or may not have caused him to comply," if "there [i]s ample time to give that order or warning," then there is "no reason whatsoever not to do so." *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (internal citation omitted). Additionally, warnings which "[a]re given before [an officer] arrive[s] with [a less-lethal weapon]" are not sufficient to provide the subject with notice that that particular force will be used. *Glenn v. Washington County*, 673 F.3d 864, 876 (9th Cir. 2011).

### h. *Less Intrusive Alternatives*

It was clearly established that "police are required to consider what other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the force employed…" *Glenn v. Washington County*, 673 F.3d 864, 876 (9th Cir. 2011) (internal citation & alteration omitted). Specifically, these considerations apply "before deploying pepper spray," *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001), and pepperball projectiles, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012).

7

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

### i. Policy And Training Violations

"Training materials and regulations are also relevant, although not dispositive, to determining whether reasonable officers would have been on notice that their conduct was unreasonable" for purposes of qualified immunity. *Vazquez v. County of Kern*, 949 F.3d 1153, 1164–65 (9th Cir. 2020). Thus, if "the officers' own training on the use of pepperball guns put them on notice that they were not to target individuals with such weapons from the distance involved here or shoot persons who were not actively posing a risk," then "the officers could have altered their tactics to bring them in compliance with their own training, which would have minimized the degree of force applied or eliminated the need for force altogether." *Nelson v. City of Davis*, 685 F.3d 867, 882, 885 n.6 (9th Cir. 2012).

In this case, it is undisputed that Hoffman violated APD pepperball training and policies. *See* ECF No. 92 at 16–19 (describing Hoffman's pepperball training, including that "[p]epper projectiles and OC spray should not [] be used against individuals or groups who … do not reasonably appear to present a risk to the safety of officers or the public" and that "personnel using a pepper projectile system should not intentionally target [the head, neck, spine or groin], except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others"; and APD policies, including "[d]o not intentionally shoot at the head, neck or spine," "give warnings prior to deployment," "[v]erbalize commands and warnings," and "[u]tilize verbal commands").

### j. "Obvious Case" Exception

"State officials can still be on notice that their conduct violates established law even in novel factual circumstances—i.e., even without a prior case that had fundamentally similar or materially similar facts." *Sandoval v. County of San Diego*, 985 F.3d 657, 680 (9th Cir. 2021) (internal citations & alteration omitted). For example, "in an obvious case, the standards set forth in *Graham* and *Garner*, though cast at a high level of generality, can clearly establish that a constitutional violation has occurred even without a body of relevant case law." *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (internal citations omitted).

In this case, even if the intersection of the relevant case law described above did not clearly establish that Hoffman's conduct was unconstitutional, nonetheless, this Court "need look no further than *Graham*'s holding that force is only justified when there is a need for force," *Blankenhorn v. City of*

8

*Orange*, 485 F.3d 463, 481 (9th Cir. 2007), to conclude that, when the government's interest "do[es] not support a need for force, *any* force used is constitutionally unreasonable," *Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014). *See*, *e.g.*, *Brown v. County of San Bernardino*, No. 21-56357, 2023 U.S. App. LEXIS 2941, at *3 (9th Cir. Feb. 7, 2023).

Hoffman used force against Chivrell which "risked causing serious harm," without warning, without "exigency motivating [Hoffman's] actions," and where Chivrell had only "committed at most minor misdemeanors." *See Nelson v. City of Davis*, 685 F.3d 867, 885–86 (9th Cir. 2012). Therefore, under these factual circumstances, "a reasonable officer would have known that firing projectiles, including pepperballs, in the direction of individuals suspected of, at most, minor crimes, who posed no threat to the officers or others, and who engaged in only passive resistance, was unreasonable." *Id*.

## B.     AWARDING QUALIFIED IMMUNITY WILL NOT RESOLVE PENDING ISSUES

Even if the Court disagrees with Plaintiffs' analysis above, and awards Hoffman qualified immunity from damages under 42 U.S.C. § 1983 because any alleged violation was not clearly established, nonetheless, the Court must still resolve the underlying issue of whether Hoffman's conduct violated Chivrell's Fourth Amendment rights. This is because Plaintiffs' pending motion for summary adjudication presents a broader issue than the qualified immunity inquiry resolves: "Whether Brian Hoffman violated Charles Chivrell's right against unreasonable seizures protected by the Fourth Amendment to the U.S. Constitution when he shot pepperball projectiles at Charles Chivrell." ECF No. 92 at 1. Accordingly, if the Court finds that Hoffman is entitled to qualified immunity, it would only resolve a *single* claim in this case: Plaintiffs' § 1983 claim against Hoffman. *See* ECF No. 100 ¶¶ 121–127 (First Claim). But it would *not* resolve other extant claims, including: § 1983 claims against the City, APD, and Chief Ahearn, *id*. (First Claim); disability-related claims against the City and APD, *id*. ¶¶ 128–141 (Second and Third Claims); *and* state law claims against the City, APD, Ahearn, and Hoffman, *id*. ¶¶ 158–209 (Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Claims).

For example, as to the § 1983 claims against the City, APD, and Ahearn, they "may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights" and, specifically, "regardless of whether [Hoffman's] exoneration is on the basis of qualified immunity…" *See Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019) (internal

9

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG

citation omitted). As to the disability-related claims, "bringing [] ADA [and RA] claim[s] allows plaintiffs to skirt the doctrine of qualified immunity, because [those] claims are asserted against the agency that employs the officers, not against the officers themselves." *Moore v. City of Berkeley*, 2018 U.S. Dist. LEXIS 48611, at *43 (N.D. Cal. Mar. 23, 2018). As to the state law claims, *federal* qualified immunity does not apply. *See*, *e.g.*, *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1083 (9th Cir. 2018); *see also Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 790 (Cal. Ct. App. 2017) (refusing to "import[] federal qualified immunity into California law").

Nonetheless, Hoffman's alleged violation of Chivrell's Fourth Amendment rights serves as a predicate element for theories underlying these extant claims and, thus, it must be resolved by this Court regardless of any ruling on the qualified immunity issue. For example, as to the disability-related claims, the "same fact questions" governing a Fourth Amendment "reasonableness determination [also] inform an accommodation analysis." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018). As to claims under the California Constitution, if "the [conduct] violates Plaintiffs' federal constitutional rights under the Fourth … Amendment[], and the relevant analysis is the same under the parallel provisions of the California Constitution," then "the [conduct] also violates the prohibitions on unreasonable seizures … enumerated in the California Constitution." *Brewster v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 82369, at *303 (C.D. Cal. May 9, 2023). As to claims under the Bane Act, "[t]he elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a specific intent to violate a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (internal citation omitted). "[E]xcessive force claims under 42 U.S.C. § 1983 are the same as those brought under a cause of action for battery." *Estate of Casillas v. City of Fresno*, 2019 U.S. Dist. LEXIS 111722, at *61 (E.D. Cal. July 2, 2019). "As a matter of law, 'extreme and outrageous conduct' [for an IIED claim] includes … use of excessive force against a suspect." *McDonald v. County of Sonoma*, 506 F. Supp. 3d 969, 987 (N.D. Cal. 2020). As to negligence-based theories, including wrongful death, a "Fourth Amendment violation … suffices to establish the breach of a duty of care under California law…" *Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011).

### III. CONCLUSION

Plaintiffs' motion for summary adjudication, ECF No. 92, should be granted.

10

Dated: January 11, 2024

Respectfully Submitted,

By: _____
   Mark E. Merin
   Paul H. Masuhara
   LAW OFFICE OF MARK E. MERIN
   1010 F Street, Suite 300
   Sacramento, California 95814
   Telephone: (916) 443-6911
   Facsimile: (916) 447-8336

  Attorneys for Plaintiffs
  ESTATE OF CHARLES CHIVRELL,
  ARIELLE CHIVRELL, K.C., and D.C.

**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLEARLY ESTABLISHED LAW**
*Estate of Chivrell v. City of Arcata*, United States District Court, Northern District of California, Case No. 4:22-cv-00019-HSG