UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESTATE OF CHARLES CHIVRELL, et al.,

Plaintiffs,

v.

CITY OF ARCATA, et al.,

Defendants.

Case No. 22-cv-00019-HSG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 139, 150

A.C. and D.C., C.C. and T.C.

Plaintiffs,

v.

CITY OF ARCATA, et al.,

Defendants.

Case No. 22-cv-04804-HSG

Re: Dkt. Nos. 72, 80

Before the Court are two motions for summary judgment pending in the related cases *Estate of Charles Chivrell et al v. City of Arcata et al*, Case No. 22-cv-00019-HSG ("*Estate of Charles Chivrell*"), and *A.C. et al v. City of Arcata et al*, Case No. 22-cv-04804-HSG ("*A.C. et al*"). Defendants City of Arcata, Arcata Police Department, Brian Ahearn, Brian Hoffman, Joseph Rodes, and Evan Beechel ("Arcata Defendants") move for summary judgment in both cases. *See Estate of Charles Chivrell*, Dkt. No. 150; *A.C. et al*, Dkt. No. 72. Defendants State of California, California Highway Patrol, Moises Cornejo-Mercado, and Michael Griffin ("State Defendants") also move for summary judgment in both cases. *See Estate of Charles Chivrell*, Dkt. No. 150; *A.C. et al*, Dkt. No. 80. The Court held a hearing on the motions on June 26, 2025. *See Estate of Charles Chivrell*, Dkt. No. 156; *A.C. et al*, Dkt. No. 84. The Court **GRANTS IN PART AND DENIES IN PART** the motions.

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.    FACTUAL AND PROCEDURAL BACKGROUND

These cases arise from the fatal shooting of Charles Chivrell by law enforcement officers. Plaintiffs Estate of Charles Chivrell, Arielle Chivrell (Mr. Chivrell's surviving spouse), K.C. (Mr. Chivrell's biological son), and D.C. (Mr. Chivrell's biological daughter) (collectively, "Estate Plaintiffs") filed their initial complaint against the Arcata Defendants and State Defendants in January 2022.  *See Estate of Charles Chivrell*, Dkt. No. 1.  In August 2022, Plaintiffs A.C., C.C., D.C., and T.C., all biological children of Mr. Chivrell (collectively, "A.C. Plaintiffs"), also sued the Arcata and State Defendants.  *See A.C. et al*, Dkt. No. 1.  The Court ordered the cases related in September 2022.  *See Estate of Charles Chivrell*, Dkt. No. 59.

In September 2023, the Estate Plaintiffs moved for summary adjudication, arguing that Defendant Hoffman's use of pepperball projectiles against Chivrell violated the Fourth Amendment.  *See Estate of Charles Chivrell*, Dkt. No. 92.  The Arcata Defendants responded by seeking a finding that Hoffman was entitled to qualified immunity.  *See id.*, Dkt. No. 96.  The Court found that Sergeant Hoffman was entitled to qualified immunity because Plaintiffs had not met their burden of showing that Hoffman's deployment of the pepperballs violated a clearly established right.  *See* Dkt. No. 126 at 15.  In addition, the Court denied Plaintiffs' motion for summary adjudication, finding that the Arcata Defendants had raised at least one triable issue of fact regarding the reasonableness of Hoffman's use of force.  *See id.* at 19.

The Arcata Defendants and State Defendants now move for summary judgment on all claims asserted in both cases.  The operative complaint in the Estate Plaintiffs' action brings the following claims:

1.   Excessive Force (42 U.S.C. § 1983);

2.   Rehabilitation Act ("RA") (29 U.S.C. § 701, et seq.);

3.   Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101, et seq.);

4.   Interference with Familial Association—Fourteenth Amendment (42 U.S.C. § 1983);

5.   Interference with Familial Association—First Amendment (42 U.S.C. § 1983);

6.   Excessive Force (Cal. Const., Article I, § 13);

7.   Bane Act (Cal. Civ. Code § 52.1);

8.  Battery;

9.  Intentional Infliction of Emotional Distress;

10. Negligence; and

11. Wrongful Death (Cal. Code Civ. Proc. § 377.60).

*See Estate of Charles Chivrell*, Dkt. No. 100 ("Estate SAC") ¶¶ 121–209.  The ADA and RA claims are asserted against the City of Arcata, Arcata Police Department, California Highway Patrol, and State of California, and not any individual officers.  *See id.* ¶¶ 128–141.  The remaining claims are asserted against the individual officers, and against the City of Arcata, the Arcata Police Department, the State of California, and California Highway Patrol based on a *Monell* theory of liability.  *See id.* ¶¶ 112–27; 142–209.  Finally, the Estate Plaintiffs seek punitive damages against the individual officers.  *See id.* at 35, § 2.

The A.C. Plaintiffs' operative complaint brings the following federal and state claims: Interference with Familial Association (First Amendment); Interference with Familial Association (Fourteenth Amendment); and Wrongful Death (Cal. Code Civ. Proc. § 377.60).  *See A.C. et al*, Dkt. No. 23 ("A.C. SAC") ¶¶ 140–60.  The A.C. Plaintiffs also seek punitive damages under state and federal law.  *See id.* at 23, §§ 2–3.[1]

Regarding the facts at issue in both cases, the Court incorporates the detailed summary of undisputed facts it provided in its order on the motion for summary adjudication.  *See* Dkt. No. 126 at 2–6.  When the Court refers to these facts in the discussion below, it will cite to their location in the summary judgment record, viewing them in the light most favorable to Plaintiffs as the non-moving parties.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The Court also notes that the briefs submitted in the two cases are largely duplicative.  Based on the Court's review of the papers, the Estate Plaintiffs' and A.C. Plaintiffs' opposition

---

[1] The operative complaints in both cases also bring claims against Does 1–20.  *See* Estate SAC ¶ 19; A.C. SAC ¶ 20.  Defendants argue that these defendants should be dismissed because they have not been identified or served.  *See* Dkt. No. 149 at 10.  Plaintiffs do not respond.  The Court therefore **DISMISSES** Doe Defendants 1–20 from the *Estate of Charles Chivrell* and *A.C. et al* actions.

United States District Court
Northern District of California

briefs are essentially the same:  the A.C. Plaintiffs' brief appears to be a pared down version of the Estate Plaintiffs' brief.  Similarly, while the Arcata and State Defendants submitted independent briefs, they substantively assert many of the same arguments.  Each group of Defendants also filed the same motions and reply briefs in both cases.  For efficiency's sake, the Court will not cite to both cases and every party's brief unless doing so is necessary to sufficiently address or accurately reflect the parties' arguments.  Where the Court cites to a docket number without indicating a case, the Court is citing the *Estate of Charles Chivrell* docket.  Where the Court refers to "Plaintiffs" or "Defendants" collectively and cites only one brief, the Court has determined that the arguments in the other Plaintiff or Defendant party's brief are the same or substantially similar, such that citing one brief is sufficient.

## II.   STANDARD OF REVIEW

Summary judgment is proper when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88.

## III.   DISCUSSION

### A.   Federal Claims

The Court previously held that Sergeant Hoffman was entitled to qualified immunity on the Estate Plaintiffs' Fourth Amendment claim because his use of the pepperball launcher against Chivrell was not clearly unlawful under the controlling standards.  *See* Dkt. No. 126 at 14.  The Court also held that it could not conclude as a matter of law on the record before it that Hoffman's actions were unreasonable, but expressly did not make any finding on the merits of the reasonableness of Hoffman's conduct.  *Id.* at 19.  The parties now dispute the import of these rulings as to the other federal claims asserted against Sergeant Hoffman, and the federal claims asserted against the other individual officers.  In their papers, the Arcata and State Defendants

argue that qualified immunity applies to all of the federal claims asserted in both cases, including the ADA and RA claims. *See* Dkt. No. 139 at 26; Dkt. No. 150 at 24. However, as Defendants conceded at the motions hearing, qualified immunity does not apply to ADA and RA claims. *See Moore v. City of Berkeley,* No. 14-CV-00669-CRB, 2018 WL 1456628, at *15 (N.D. Cal. Mar. 23, 2018), *aff'd*, 801 F. App'x 480 (9th Cir. 2020) (observing that "bringing an ADA claim allows plaintiffs to skirt the doctrine of qualified immunity, because ADA claims are asserted against the agency that employs the officers, not against the officers themselves") (citing *Owen v. City of Independence*, 445 U.S. 622, 650 (1980)); Dkt. No. 158 ("Tr.") 25:9–16.

Accordingly, the Court will first address the issue of whether qualified immunity bars the Estate Plaintiffs' excessive force claims against the individual officers not including Sergeant Hoffman, and Plaintiffs' claims for interference with familial association under the First and Fourteenth Amendments asserted against all of the officers. The Court will then turn to the Estate Plaintiffs' ADA and RA claims brought against Defendants City of Arcata, the Arcata Police Department, the State of California, and the California Highway Patrol. Finally, the Court will address the Plaintiffs' *Monell* theories asserted against the municipal Defendants.

### i.  Qualified Immunity

#### a.  Legal Standard

The doctrine of qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is supposed to give government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). In theory, the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted). To determine if an officer is entitled to qualified immunity, the Court considers whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may choose which prong to address first. *Id.* at 236. Under either prong, though, the Court may not resolve genuine disputes of fact in favor of the party seeking summary

United States District Court
Northern District of California

1    judgment on qualified immunity grounds, and must, as in other cases, view the evidence in the

2    light most favorable to the nonmovant. *Tolan,* 572 U.S. at 656.

3          Under the second prong of the qualified immunity inquiry, "[a]n officer 'cannot be said to

4    have violated a clearly established right unless the right's contours were sufficiently definite that

5    any reasonable official in [his] shoes would have understood that he was violating it.'" *City &*

6    *Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Plumhoff v. Rickard*, 572 U.S. 765,

7    778–79 (2014)). While this does not "require a case directly on point, [ ] existing precedent must

8    have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

9    The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high

10   level of generality." *Id.* at 742. The Supreme Court has further instructed that, where "the result

11   depends very much on the facts of each case . . . officers are entitled to qualified immunity unless

12   existing precedent 'squarely governs' the specific facts at issue." *Nicholson v. City of L.A.*, 935

13   F.3d 685, 695 (9th Cir. 2019) (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)); *see*

14   *also D.C. v. Wesby*, 583 U.S. 48, 64(2018) ("[W]e have stressed the need to identify a case where

15   an officer acting under similar circumstances . . . was held to have violated the Fourth

16   Amendment." (quotations omitted)). Put another way, "[i]t is insufficient for a legal principle to

17   merely be 'suggested by then-existing precedent.'" *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th

18   Cir. 2024) (quoting *Wesby*, 583 U.S. at 63). Instead, "'[t]he precedent must be clear enough that

19   every reasonable official would interpret it to establish the particular rule the plaintiff seeks to

20   apply.'" *Id. See also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) ("A right is clearly

21   established when it is 'sufficiently clear that every reasonable official would have understood that

22   what he is doing violates that right.'"). "Such specificity is especially important in the Fourth

23   Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult

24   for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the

25   factual situation the officer confronts.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1038 (9th

26   Cir. 2018) (quoting *Mullenix*, 577 U.S. at 12). The Ninth Circuit "routinely rel[ies] on the

27   intersection of multiple cases when holding that a constitutional right has been clearly

28   established," on the ground that "[t]his approach is required by the Supreme Court's instruction

that qualified immunity is improper where a legal principle has a sufficiently clear foundation in then-existing precedent." *Polanco v. Diaz*, 76 F.4th 918, 930 n.8 (9th Cir. 2023) (cleaned up).

### b. Analysis

#### 1. Excessive Force (Fourth Amendment)

##### a. Sergeant Hoffman's Use of Intermediate Force

As an initial matter, the Estate Plaintiffs urge the Court to reconsider its prior ruling granting Sergeant Hoffman qualified immunity. Plaintiffs argue that this case "'cannot be resolved at summary judgment on qualified immunity grounds'" because the Court found that "'factual disputes exist as to the objective reasonableness of [Hoffman's] conduct.'" *See* Dkt. No. 146 at 17 (quoting *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024)). However, this argument misunderstands the basis of the Court's prior ruling, which granted Sergeant Hoffman qualified immunity on the "clearly established right" prong of the qualified immunity test. It is true that "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *See Tolan*, 572 U.S. at 656. And here, in granting qualified immunity, the Court found that Sergeant Hoffman did not violate a clearly established right, even construing the facts in the light most favorable to Plaintiffs as the nonmoving parties. *See* Dkt. No. 126 at 8–15. *Cf. Rosenbaum*, 107 F.4th at 926 (affirming denial of qualified immunity where, viewing the facts in the light most favorable to the plaintiff, a reasonable officer "would know that [the conduct] [was] a violation of clearly established law"). The Court did not reach the first prong of the qualified immunity inquiry, and therefore did not making any finding regarding the reasonableness of Sergeant Hoffman's conduct in the context of Defendants' request for qualified immunity.

At the same time, Plaintiffs moved for summary adjudication as to claims and defendants not subject to the Court's grant of qualified immunity to Sergeant Hoffman. *See* Dkt. No. 126 at 15. Several of those claims hinge on a finding that Sergeant Hoffman's use of force was unreasonable. *See id.* at 19. As such, the Court analyzed the reasonableness of Hoffman's use of force, but at that stage viewed the record in the light most favorable to the nonmoving parties, *i.e.*, Defendants. *See id.* at 15 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88). That analysis

United States District Court
Northern District of California

1    does not control the Court's consideration of Defendants' motions for summary judgment, the

2    standard for which requires the Court to view the facts in the light most favorable to Plaintiffs.

3         Plaintiffs also contend that the Court should reconsider its prior qualified immunity ruling

4    in light of *Hyer v. City & County of Honolulu*, 118 F.4th 1044 (9th Cir. 2024), a case decided after

5    the summary adjudication order.  Dkt. No. 146 at 18.  Plaintiffs rely on *Tan Lam v. City of Los*

6    *Banos*, 976 F.3d 986 (9th Cir. 2020), in which the Ninth Circuit observed that "[w]hen a case

7    involves analogous conduct that occurred around the same time as the underlying incident in the

8    matter before [the court], and the case holds that the conduct at issue there violated clearly

9    established law, then that case may indicate that the claim for qualified immunity presently before

10    [the court] should likewise be rejected."  *Id.* at 1001–02.  Applying this rule, Plaintiffs argue that

11    *Hyer*'s interpretation of *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012), a decision issued

12    before the incident in this case, "confirms that Hoffman is not entitled to qualified immunity."

13    Dkt. No. 146 at 19.

14         The Court disagrees, and finds that *Hyer* does not change the Court's prior analysis.  The

15    court in *Hyer* observed that "[i]n *Nelson v. City of Davis*, [the Ninth Circuit] held it was clearly

16    established that 'a reasonable officer would have known that firing projectiles, including

17    pepperballs, in the direction of individuals suspected of, at most, minor crimes, who posed no

18    threat to the officers or others, and who engaged in only passive resistance, was unreasonable.'"

19    *Hyer*, 118 F.4th at 1068 (quoting *Nelson*, 685 F.3d at 886).  Rather than contradict the Court's

20    earlier order, this description of *Nelson* provides additional support for the Court's conclusion that

21    *Nelson* "bears little resemblance to this case," and accordingly "does not meet the high threshold

22    for overcoming qualified immunity" as to Sergeant Hoffman.  *See* Dkt. No. 126 at 13; *id.* at 14

23    (finding that "Chivrell's actions presented an obviously different and much more concerning risk"

24    than those of the decedent in *Nelson* because Chivrell was "armed with a gun, was acting

25    erratically, and was in an uncontained public area where he could (and did) encounter members of

26    the public").  Likewise, the facts of *Hyer* are too distinct from the facts here to establish "beyond

27    debate" that Hoffman's use of force was unlawful.  In *Hyer*, the court held that triable facts existed

28    as to the reasonableness of officers' use of chemical munitions to "flush out" a man who was

1    armed with a bow and arrow, but who was barricaded in his home where "there were no

2    bystanders at risk of harm," and who had not brandished his weapon for three hours prior to the

3    use of force. *Hyer*, 118 F.4th at 1064. Here, it is undisputed that Chivrell was carrying a gun

4    while walking on a public road near houses and people, and was continuing to move away from

5    officers. *See* Dkt. No. 146-1 ("Merin Decl."), Ex. 21, 16:00–18:00. Given these material factual

6    differences, *Hyer* fails to clearly establish that Sergeant Hoffman's use of the pepperball launcher

7    against Chivrell was unconstitutional. The Court thus declines to reconsider its qualified

8    immunity ruling regarding the excessive force claim against Sergeant Hoffman.

### b.  Officer Griffin's Use of Deadly Force

10       The Estate Plaintiffs allege that Officer Griffin's use of deadly force was unconstitutional

11   under the Fourth Amendment. *See* Dkt. No. 153 at 13. In response, the State Defendants argue

12   that Griffin is entitled to qualified immunity because "it was not clearly established that using

13   deadly force in the situation faced by Officer Griffin would constitute excessive force under the

14   Fourth Amendment." Dkt. No. 150 at 21. Defendants also note that the Estate Plaintiffs appeared

15   to concede during the hearing on the motion for summary adjudication that the shooting was

16   justified. *See id.* at 23; Dkt. No. 114 at 6:13–17 (Plaintiffs' counsel acknowledging "that if you

17   were just to look at the latter stage where Mr. Chivrell ducks, is hit again, then turns around and

18   pulls his weapon and points it[,] at that point we concede that they are justified in shooting him").

19       Still, in their opposition to summary judgment, Plaintiffs argue that Officer Griffin's use of

20   deadly force constituted excessive force under clearly established law. Their theory relies on a

21   determination that Hoffman's deployment of pepperballs also was a clearly established

22   constitutional violation. According to Plaintiffs, because Hoffman's use of the pepperballs was

23   clearly unlawful, Griffin's "plan to provide lethal coverage . . . while Hoffman just started firing at

24   Chivrell's back . . . was [also] clearly established to be unlawful." Dkt. No. 153 at 16–17. This

25   argument fails, as Plaintiffs have not shown that Hoffman's use of force was clearly unlawful

26   under controlling law. Plaintiffs have thus failed to identify any existing precedent that "squarely

27   governs" the specific facts of Officer Griffin's use of deadly force in this case. *See Nicholson*, 935

28   F.3d at 695. Moreover, the Ninth Circuit has held in many cases that an officer is justified in

United States District Court
Northern District of California

9

using deadly force when he is threatened with a gun or knife.  *See Smith v. City of Hemet*, 394

F.3d 689, 704 (9th Cir. 2005) (collecting cases), *disapproved of on other grounds by Lemos v.*

*Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022).  For these reasons, the Court finds that Officer

Griffin is entitled to qualified immunity for his use of deadly force against Chivrell.

### c.  Failure to Intercede / Integral Participant Theories

The Estate Plaintiffs allege that Officers Rodes and Beechel violated the Fourth

Amendment because they "failed to intercede in, were integral participants in, and/or aided and

abetted" Sergeant Hoffman's use of force against Chivrell.  *See* Estate SAC ¶ 124.

As it did in deciding Estate Plaintiffs' motion for summary adjudication, the Court begins

with the second prong of the qualified immunity analysis:  whether Rodes and Beechel violated a

clearly established right, assuming the truth of Plaintiffs' allegation that they failed to intercede in,

or participated as integral participants in, Sergeant Hoffman's deployment of the pepperballs

against Chivrell.  The Arcata Defendants argue that Rodes and Beechel are entitled to qualified

immunity because there is no clearly established law "prohibiting . . [the] [o]fficers from failing to

intercede in Hoffman's" use of force.  Dkt. No. 139 at 25.  The Court agrees.

The Estate Plaintiffs contend that "binding Ninth Circuit case law" is sufficient to put the

officers on notice that they had a duty to intervene in Sergeant Hoffman's unconstitutional use of

force.  *See* Dkt. No. 146 at 20.  But none of the cases Plaintiffs cite found an officer liable for

excessive force under a failure to intervene theory where, as here, the underlying constitutional

violation itself was not clearly established.  Plaintiffs cite *Tobias v. Arteaga*, 996 F.3d 571, 583

(9th Cir. 2021), in which the Ninth Circuit observed that the court "had clearly established that

'police officers have a duty to intercede when their fellow officers violate the constitutional rights

of a suspect or other citizen.'"  *See id.* (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th

Cir. 2000)).  However, the *Tobias* court did not make any specific finding as to whether the

defendant officers actually had a duty to intervene to stop the underlying constitutional violation,

and instead remanded the case to the district court to consider that issue.  *See Tobias*, 996 F.3d at

1289.  Plaintiffs also rely on *Stephenson v. California*, 761 F. Supp. 3d 1242 (C.D. Cal. 2025), a

non-binding Central District case, in which the court expressly found that the underlying conduct

was "sufficiently similar" to the facts of a binding case "to have put a reasonable officer on notice that this conduct was unconstitutional," and therefore also sufficient to put an officer on notice that he had a duty to intervene. *See id.* at 1269, 1271. *Cf. Cunningham*, 229 F.3d at 1290 (granting qualified immunity to "non-shooting" officers present at a shootout because they "had no realistic opportunity to intercede" to prevent their fellow officers from shooting). By contrast, the Court has ruled that the underlying conduct here, Sergeant Hoffman's deployment of the pepperballs, was not clearly unlawful under controlling precedent.

The cases the Estate Plaintiffs cite to support their integral participant theory are materially distinguishable along the same lines. Plaintiffs argue that several cases clearly establish that Rodes and Beechel are liable for excessive force because they "act[ed] as armed backup, while Hoffman executed the agreed-to 'plan' of shooting Chivrell, without provocation." *See* Dkt. No. 146 at 19. Again, the cited cases plainly do not support this contention. In two of them, the Ninth Circuit actually granted qualified immunity to the purported "integral participant" officers after finding a lack of clearly established law to put them on notice that the underlying conduct was unconstitutional. *See Peck v. Montoya*, 51 F.4th 877, 892 (9th Cir. 2022) (holding that the officers were entitled to qualified immunity because they did not "set in motion acts . . . that they knew or should have known would cause a constitutional violation"); *Boyd*, 374 F.3d at 783 (finding that officers were integral participants in unconstitutional conduct, but nonetheless entitled to qualified immunity because binding precedent "failed to provide the officers in [the] case with the requisite level of guidance to put them on notice that the underlying conduct was a constitutional violation"). And in the other two cases Plaintiffs cite, the courts expressly found that clearly established law was sufficient to put an officer on notice that the conduct they were participating in was unconstitutional. *See Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018) (finding that "it was clearly established law" at the time of the incident that the underlying conduct, a warrantless entry, was not justified under the Fourth Amendment); *Denby v. Engstrom*, No. 23-15658, 2025 WL 841608, at *3 (9th Cir. Mar. 18, 2025) (holding that existing precedent "specifically and clearly established" that the underlying conduct, an unreasonably destructive search, "amount[ed] to a constitutional violation").

In short, Plaintiffs have not presented any case or cases establishing "beyond debate," *al-Kidd*, 563 U.S. at 741, that Officers Rodes and Beechel violated the Fourth Amendment by participating as integral participants in, or for failing to intervene in, Sergeant Hoffman's use of force when that use of force itself was not a clearly established constitutional violation. As such, the officers are entitled to qualified immunity. *See Boyd*, 374 F.3d at 783.

Plaintiffs similarly argue that Officer Griffin and Officer Cornejo-Mercado are liable for excessive force under the failure to intervene and integral participant theories asserted against Rodes and Beechel related to Sergeant Hoffman's use of force. *See* Dkt. No. 153 at 13. The Court finds that Griffin and Cornejo-Mercado are entitled to qualified immunity for the same reason as Rodes and Beechel.[2] Plaintiffs have not presented any cases clearly establishing that officers may be held liable for a constitutional violation under these kinds of derivative theories where controlling precedent does not clearly proscribe the underlying constitutional violation. *See Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (plaintiffs bear the burden of showing that the rights allegedly violated by the officers were "clearly established").

### 2. Interference with Familial Association (First and Fourteenth Amendments)

#### a. Sergeant Hoffman's Use of Intermediate Force

The Court again begins with the second prong of the qualified immunity analysis, asking whether Sergeant Hoffman's deployment of the pepperballs violated a clearly established right under the First and Fourteenth Amendments. In opposing qualified immunity for Sergeant Hoffman on their familial association claims, the A.C. Plaintiffs repeat the Estate Plaintiffs' argument that the Court should revisit its prior grant of qualified immunity to Sergeant Hoffman on the Fourth Amendment claim. *See A.C. et al*, Dkt. No. 76 at 21–22. This argument also misunderstands the scope of the Court's previous ruling. "The Ninth Circuit has made clear 'Fourth Amendment cases . . . do not clearly establish the contours of the Fourteenth Amendment

---

[2] Plaintiffs contend that the State Defendants "do not seek qualified immunity for Cornejo-Mercado" because their briefing "solely addresses Griffin's use of deadly force." Dkt. No. 153 at 18. However, in their opening brief, Defendants argue that "each officer is entitled to qualified immunity" because "there is no evidence showing that the officers violated any rights that were 'clearly established' at the time of the alleged violation." *See* Dkt. No. 150 at 2. This argument is sufficient to raise a qualified immunity defense as to Officer Cornejo-Mercado.

United States District Court
Northern District of California

substantive due process rights.'"  *Quinto-Collins v. City of Antioch*, 718 F. Supp. 3d 1033, 1057 (N.D. Cal. 2024), *appeal dismissed sub nom. Quinto-Collins v. Perkinson*, No. 24-1835, 2024 WL 3175793 (9th Cir. May 21, 2024) (quoting *Nicholson*, 935 F.3d at 696 & n.5).  The Court's grant of qualified immunity to Sergeant Hoffman based on a lack of clearly established law in the Fourth Amendment context does not control the qualified immunity analysis in the Fourteenth and First Amendment contexts.

That said, Plaintiffs nonetheless fail to identify any clearly established law that would proscribe Hoffman's conduct under the First and Fourteenth Amendments.  Instead, they argue that the Arcata Defendants' assertion that  "'because no clearly established federal law proscribed [the officers'] actions at the time . . . qualified immunity applies to all federal claims, including . . . the First and Fourteenth Amendments'" is not sufficient to raise a qualified immunity defense as to these claims.  *See* Dkt. No. 146 at 30 (quoting Dkt. No. 139 at 26).  The Court is not persuaded.  The question of waiver is a "discretionary, not jurisdictional, determination" that turns on whether the issue was "raised sufficiently for the trial court to rule on it."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).  Defendants' argument, while brief, clearly contends that qualified immunity bars Plaintiffs' familial association claims.  *See* Dkt. No. 139 at 26.  *Cf. Villanueva v. California*, 986 F.3d 1158, 1164 (9th Cir. 2021) (affirming trial court's determination that officers had waived qualified immunity defense where they had argued that they were entitled to qualified immunity only "on some claims").  Moreover, Plaintiffs, not Defendants, bear the burden of showing that the rights allegedly violated by the officers were "clearly established."  *See Shafer*, 868 F.3d at 1118; *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).  The Court thus finds that Defendants sufficiently raised the qualified immunity defense as to the First and Fourteenth Amendment claims, which shifted the burden to the Estate Plaintiffs to provide a substantive response and identify clearly established law.

Even considering the Fourteenth Amendment cases Plaintiffs cite elsewhere in their briefing, none of them are similar enough to the facts here to put Sergeant Hoffman on notice that his conduct would "shock the conscience" under the Fourteenth Amendment.  *See Nicholson*, 935 F.3d at 692.  All of the controlling cases that Plaintiffs cite involved Fourteenth Amendment

claims where officers used deadly force against unarmed individuals.  *See Scott v. Smith*, 109 F.4th 1215, 1223 (9th Cir. 2024); *Nicholson*, 935 F.3d at 692; *Foster v. City of Indio*, 908 F.3d 1204, 1213 (9th Cir. 2018); *see also S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (affirming district court's grant of summary judgment on plaintiff's Fourteenth Amendment claim on the merits).  These cases cannot squarely govern the facts here given that Sergeant Hoffman used intermediate, not deadly, force against Chivrell, who was armed when the officers encountered him.  Accordingly, Sergeant Hoffman is entitled to qualified immunity on Plaintiffs' First and Fourteenth Amendment claims.

### b.  Officer Griffin's Use of Deadly Force

Plaintiffs argue that *Nicholson v. City of Los Angeles* clearly establishes that Griffin's use of deadly force violated the Fourteenth Amendment.  Dkt. No. 153 at 23.  In *Nicholson*, an officer shot at a student carrying a toy gun "within seconds of observing the 'gun.'"  *See* 935 F.3d at 692. The court found that, taking as true the plaintiff's contentions that the gun was never pointed at officers and that the officer shot at the victim while he was "standing among a group of school-aged youths with their backpacks and school uniforms," there was no "rapidly escalating confrontation" or "extreme emergency" requiring the use of deadly force.  *Id*. at 694.  Instead, the officer had time to "assess what [was] happening before employing deadly force."  *Id.*  Under these circumstances, the court held that the officer's use of force met the "deliberate indifference" standard under the Fourteenth Amendment.  *Id.* at 695.  Applying *Nicholson* here, Plaintiffs contend that "Chivrell's conduct was even more innocuous than the subject in *Nicholson*" because he "was not holding a gun, he was in a rural area and not near anyone else, he was displaying symptoms of mental illness, and he was walking away from officers when they planned to shoot him in the back."  Dkt. No. 153 at 22.

This argument is meritless, as Plaintiffs plainly ignore the conduct that directly—and incontrovertibly—precipitated Officer Griffin's use of deadly force against Chivrell:  Chivrell raised and fired his gun in the officers' direction.  According to Plaintiffs' version of the facts, "Chivrell began to run away from the officers after being struck by the pepper balls and, as he ran, he reached down, drew the pistol from his holster, and fired an errant gunshot."  *See* Dkt. No. 153

United States District Court
Northern District of California

at 12.  This seems to imply that Chivrell was pointing his gun away from the officers and did not turn and shoot in their direction.  But such a characterization of the facts, if Plaintiffs are making it, is directly contradicted by the video evidence showing Chivrell raising his gun towards the officers and firing.  *See* Merin Decl. II, Ex. 13 at 18:00–18:10; *id.*, Ex. 17 at 16:10–16:30; *see also* Dkt. No. 114 at 6:13–17 (Plaintiffs' counsel describing the footage as showing that Chivrell "turns around and pulls his weapon and points it").  Even on a summary judgment motion, the Court is not required to accept as true Plaintiffs' factual assertions that are "blatantly contradicted" by video footage.  *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that where a version of the facts is "blatantly contradicted" by dashcam video footage, the district court "should . . . view the facts in the light depicted by the videotape"); *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (applying the principle from *Scott* to bodycam footage and accompanying audio).  And given the video evidence here, the Court finds that it is undisputed that Chivrell actually drew and fired his weapon in the officers' presence before Officer Griffin shot him.  These facts materially distinguish this case from *Nicholson*, which involved a toy gun that (obviously) was never fired.  *See Nicholson*, 935 F.3d at 694.[3]  Finally, this is not the unusual circumstance in which Officer Griffin's use of deadly force in response to Chivrell's conduct was so obvious as to be a clear violation of the Fourteenth Amendment even absent a factually analogous case.  The Court thus finds that Officer Griffin's use of deadly force was not clearly unlawful under controlling Fourteenth Amendment standards.

### c.  Failure to Intercede / Integral Participant Theories

The Estate Plaintiffs' theory that Officers Rodes, Beechel, Cornejo-Mercado, and Griffin are liable for excessive force because they "failed to intercede in, were integral participants in, and/or aided and abetted" Sergeant Hoffman's use of force is also the basis of their First and

---

[3] Plaintiffs also cite to *Foster*, 908 F.3d at 1212, and describe the Ninth Circuit's decision as "rejecting officer's argument that he was engaged in a fast-moving situation and fired his gun when he believed [the] decedent was turning toward him to shoot him because there were genuine disputes of fact."  *See* Dkt. No. 153 at 23.  Plaintiffs' characterization is inaccurate.  In fact, the court held that it "lack[ed] jurisdiction to consider [the officer's] argument" because doing so would require the court to reweigh the evidence.  *See Foster*, 908 F.3d at 1213.  This holding plainly cannot provide clearly established law as to Plaintiffs' Fourteenth Amendment claims.

Fourteenth Amendment claims, as well as the A.C. Plaintiffs' similar claims. *See Estate of Charles Chivrell*, Dkt. No. 153 at 31; *A.C. et al*, Dkt. No. 76 at 24; *id.*, Dkt. No. 82 at 16. Again, Plaintiffs do not identify clearly established law prohibiting the officers' alleged conduct under the Fourteenth or First Amendments. *See Estate of Charles Chivrell*, Dkt. No. 146 at 20 (citing *Tobias*, 996 F.3d at 583, which did not address any familial association claims, and *Peck*, 51 F.4th at 894, in which the court found that there was no Fourteenth Amendment violation); *id.*, Dkt. No. 153 at 17 (same); *A.C. et al*, Dkt. No. 76 at 24 (same); *id.*, Dkt. No. 82 at 16 (same).

***

Plaintiffs have not identified any controlling law establishing that Sergeant Hoffman's use of intermediate force or Officer Griffin's use of deadly force in the circumstances of this case clearly violated the Fourth, Fourteenth, or First Amendments. Similarly, Plaintiffs do not identify clearly established law that would squarely govern the integral participant and failure to intervene theories they have asserted against Officers Rodes, Beechel, Griffin, and Cornejo-Mercado. Accordingly, qualified immunity is **GRANTED** to the individual officers on Plaintiffs' Fourth, Fourteenth, and First Amendment claims.

### ii. ADA and RA Claims

"'To state a claim under Title II of the ADA, a plaintiff generally must show: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability.'" *Hyer*, 118 F.4th at 1065 (quoting *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600 (2015)). Section 504 of the Rehabilitation Act also incorporates these four elements. *See Bouslog v. Care Options Mgmt. Plans & Supportive Servs., LLC*, 459 F. Supp. 3d 1281, 1286 (N.D. Cal. 2020).

The Arcata Defendants argue that they are entitled to summary judgment on the Estate Plaintiffs' ADA and RA claims because there is no evidence that Chivrell had a qualifying

United States District Court
Northern District of California

1    disability, no evidence that the officers knew or should have known of his disability, and no

2    evidence that the officers failed to accommodate his disability. *See* Dkt. No. 139 at 27–29. The

3    State Defendants raise the same arguments. *See* Dkt. No. 150 at 24–29. The Court disagrees, and

4    finds that triable disputes of fact preclude summary judgment.

5        First, whether Chivrell had a qualifying disability is genuinely disputed based on the

6    record. Defendants argue that Plaintiffs' claims fail as a matter of law because they have not

7    produced any medical records indicating that Chivrell "had a diagnosed mental health condition,"

8    while "all the evidence" confirms that he was suffering from methamphetamine abuse, which is

9    not a qualifying disability. *See* Dkt. No. 139 at 27; *see also* Dkt. No. 150 at 24–25 (State

10   Defendants arguing that Chivrell's family members were not aware that he had any "diagnosed

11   mental health condition" or ever received treatment for one). It is true that the illegal use of drugs

12   alone does not constitute a qualifying disability under the ADA. *See Thompson v. Davis*, 295 F.3d

13   890, 896 (9th Cir. 2002). But the text of the ADA does not require that a person be diagnosed

14   with, or receive medical treatment for, a qualifying disability to show that he has one. *See* 28

15   C.F.R. § 35.108 (defining "disability" as an individual who has"(i) [a] physical or mental

16   impairment that substantially limits one or more of the major life activities of such individual; (ii)

17   [a] record of such an impairment; or (iii) [b]eing regarded as having such an impairment"). And

18   Defendants cite no controlling or persuasive authority supporting their argument that an official

19   diagnosis, medical evidence, or medical expert testimony is required to prove a qualifying

20   disability. *See* Dkt. No. 139 at 27 (Arcata Defendants' motion citing *Zenor v. El Paso Healthcare*

21   *Sys., Ltd.*, 176 F.3d 847, 859 (5th Cir. 1999), where the plaintiff sought to establish a qualifying

22   disability by citing evidence that his employer regarded him as an addict, and *Brown v. City of*

23   *Salem*, No. CIV. 04-1541-HA, 2007 WL 671336, at *9 (D. Or. Feb. 27, 2007), an inapplicable

24   case addressing whether the plaintiff was terminated from his job due to his sleep apnea

25   disability); *see* Dkt. No. 149 at 7 (Arcata Defendants' reply citing no caselaw); *see also* Dkt. No.

26   150 at 24–25 (State Defendants' motion citing no caselaw).[4]

27   _____

28   [4] The Arcata Defendants argue that courts have "held that temporary impairments caused by
     voluntary substance use do not constitute protected disabilities under the ADA or Rehabilitation

Further, the Court disagrees that the record evidence "confirms" that Chivrell was suffering solely from methamphetamine abuse, and not any mental health disorder. Instead, Plaintiffs have cited evidence from which a reasonable jury could conclude that Chivrell had a sufficient "record of impairment" showing a mental health disorder. *See* 28 C.F.R. § 35.108. For example, Arielle Chivrell told officers that in October 2020, her husband began experiencing mental health issues, and she observed him suffer from paranoid episodes in which he reported hearing voices. *See* Merin Decl., Ex. 15 at 256–57. Plaintiffs have also produced a May 2021 report from a hospital in Eureka describing how Chivrell was brought in by law enforcement on a "5150" hold for being a danger to others, and that he reported that he had been hearing voices for six months, which "became worse" after quitting drugs for a time. *See id.*, Ex. 16 at 259. Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find that Chivrell was suffering from a mental health disorder and therefore had a qualifying disability independent of his drug use. *See, e.g.*, *Sommers v. City of Santa Clara*, 516 F. Supp. 3d 967, 989 (N.D. Cal. 2021) (decedent's mother's declaration and evidence of recent 5150 hold were sufficient to create genuine dispute of fact as to qualifying disability).

Second, a reasonable jury could find that Chivrell's conduct should have alerted the officers to his mental health disorder. Defendants argue that "[n]othing about his conduct indicated a mental health condition rather than drug intoxication," and that "his behavior at the scene (erratic movements, shouting, and unresponsiveness) was consistent with acute drug-induced psychosis." *See* Dkt. No. 139 at 27–28. However, the Court agrees with Plaintiffs that Defendants have not established that drug intoxication is the only inference that could be drawn by a reasonable jury based on the evidence. The officers did not observe Chivrell using or possessing any drugs. Instead, they observed him acting erratically. *See* Merin Decl., Ex. 23 at 294 (Officer Rodes observed Chivrell acting "erratic" and "agitated"); *id.*, Ex. 20 at 279 (Officer Griffin told

---

Act." *See* Dkt. No. 139 at 27. The issue here, however, is not whether Chivrell's alleged drug use was protected by the ADA, but what kind of evidence is required to prove a qualifying disability that is independent of any drug use disorder. The Court also notes that Defendants' citation to *Brown v. City of Salem* reflects an incorrect Westlaw citation and date. *See* Dkt. No. 139 at 27 (citing "*Brown v. City of Salem*, 2015 WL 12868086, at *6 (D. Or. Mar. 30, 2015)").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Officer Cornejo-Mercado that Chivrell was "acting erratically").  Viewing the facts in the light

2    most favorable to Plaintiffs, a reasonable factfinder could conclude that Chivrell demonstrated

3    several behaviors described in the California Highway Patrol's "Crisis Intervention" policy as

4    "generalized signs and symptoms of behavior that may indicate the presence of mental illness or a

5    crisis."  *See* Dkt. No. 153-1 ("Merin Decl. II"), Ex. 6 at 72 (describing that "inappropriate

6    behavior" and  "abnormal frustration . . . or aggressive behavior" may indicate mental illness).

7    Officer Hoffman even told the other officers that "it appeared the subject was possibly under the

8    influence of a stimulant *or* having a mental health issue."  Merin Decl., Ex. 27 at 310 (emphasis

9    added).  The Court thus finds that whether the officers had notice of a qualifying disability is a

10   triable issue of fact.

11          Third, the Court finds that genuine issues of fact exist as to whether the officers made

12   reasonable accommodations.  The Estate Plaintiffs argue that the officers could have reasonably

13   accommodated Chivrell's alleged disability in numerous ways, including by approaching him "in

14   a nonconfrontational manner, without displaying or threatening the use of force" and by "not using

15   unreasonable and excessive force" against him.  *See* Estate SAC ¶¶ 132, 139.  Defendants respond

16   that "the officers were not required to delay or alter their tactics in the face of an armed,

17   noncompliant suspect."  *See* Dkt. No. 149 at 8.  The only relevant, controlling authority they cite

18   to support this assertion is *Sheehan*, 743 F.3d at 1233, which involved a woman who was shot by

19   police officers after she threatened them with a knife.  *See id*. at 1218.  But in that case, the Ninth

20   Circuit denied summary judgment on the plaintiff's ADA claim, holding that "although [the]

21   officers were forced to make split-second decisions," "[a] reasonable jury nevertheless could find

22   that . . . the officers [had] an opportunity to wait for backup and to employ less confrontational

23   tactics," even though the plaintiff was armed with a knife throughout the encounter with police.

24   *See id.* at 1233.  Given that Plaintiffs "have raised a number of possible accommodations, . . . and

25   because the reasonableness of an accommodation is ordinarily a question of fact," *see Hyer*, 118

26   F.4th at 1066, the Court **DENIES** summary judgment as to Plaintiffs' ADA and RA claims based

27

28

1    on the officers' conduct other than Officer Griffin's use of deadly force.[5]

2        ### iii.    *Monell* Liability

3        The Arcata Defendants argue that summary judgment should be granted on all claims

4    Plaintiffs assert against the City of Arcata and Arcata Police Department based on *Monell* theories

5    of municipal liability.  *See* Dkt. No. 139 at 31.  This includes Plaintiffs' excessive force, ADA,

6    RA, and interference with familial association claims.  *See* Estate SAC ¶¶ 125, 133, 140, 147,

7    155.[6]  Plaintiffs allege that the City and APD are liable for the officers' violations under two

8    *Monell* theories: 1) failure to train and 2) ratification.  *See id.* ¶¶ 112–16 (failure to train

9    allegations), 117–19 (ratification allegations); Tr. 17:10 (confirming Plaintiffs are asserting those

10    two theories).

11        ### a.  Failure to Train

12        The Court finds that Defendants are entitled to summary judgment on Plaintiffs' failure to

13    train theory.  For a local government to be liable for § 1983 and ADA violations, "a municipality's

14    failure to train its employees in a relevant respect must amount to deliberate indifference."

15    *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Deliberate indifference is satisfied "[w]hen city

16    policymakers are on actual or constructive notice that a particular omission in their training

17    program causes city employees to violate citizens' constitutional rights."  *See id.*  Further, where,

18    as here, a plaintiff does not provide proof of a pre-existing pattern of violations, *see* Dkt. No. 146

19    at 22, a single constitutional violation may show a municipality's deliberate indifference in the

20    "rare" circumstance in which "the unconstitutional consequences of failing to train" are "so

21    patently obvious."  *Connick*, 563 U.S. at 64.

22        In this case, Plaintiffs have failed to identify any "particular omission," deficiency, or

23

24    _____

    [5] To the extent that the Estate Plaintiffs' ADA and RA failure to accommodate claims are based on

25    Officer Griffin's use of deadly force, the Court **GRANTS** summary judgment because that force
    was reasonable as a matter of law.  *See* discussion *infra* Section III.B.i.b.

26    [6] Plaintiffs argue that the Arcata Defendants do not move for summary judgment on the ADA and

27    RA claims asserted against the City and APD based on *Monell* liability.  *See* Dkt. No. 146 at 29.
    However, given that Defendants' opening brief argues that "summary judgment should be granted

28    as to all *Monell* claims," *see* Dkt. No. 139 at 34, the Court declines to construe Defendants'
    argument so narrowly.

United States District Court
Northern District of California

inadequacy in Arcata's training of its police officers that led to the alleged constitutional and ADA violations. *See Connick*, 563 U.S. at 61. Plaintiffs argue that the officers' training was deficient because their Peace Officer Standards and Training (POST) training was "years-old at the time of the incident" and because the City of Arcata contracts with the Humboldt County Department of Health & Human Services' Mobile Intervention & Services Team (MIST) "for situations like this," but MIST was not at the scene during the encounter with Chivrell. *See* Dkt. No. 146 at 22. However, Plaintiffs do not explain how the dated nature of the POST training made it inadequate or deficient, or submit any evidence to support this theory. They also do not explain how MIST's lack of presence at the scene stemmed from a specific deficiency or inadequacy in police training. Finally, Plaintiffs offer the testimony of their police practices expert that the officers "apparent lack of training . . . resulted in the needless and avoidable violent outcome of their encounter" with Chivrell. *See* Merin Decl., Ex. 39 at 396. But in his report, the expert cited only the POST professional standards that apply to California police officers generally, and did not identify or discuss any particular deficiencies or inadequacies in the training that the specific officers here received from Defendants. *See id.* at 392–96.

At the motions hearing, Plaintiffs' counsel argued that the inadequacy of the officers' training "is reflected by the incident itself." *See* Tr. 22:14–15. However, Plaintiffs do not cite any authority to support this principle, which is inconsistent with the requirement that for municipal liability to attach based on a failure-to-train theory, "the *identified deficiency* in a city's training program must be closely related to the ultimate injury." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (emphasis added). Significantly, in the cases Plaintiffs do cite, the plaintiffs submitted evidence showing deficient training or a city's failure to train, and did not rely solely on the incident itself. *See, e.g.*, *Wroth v. City of Rohnert Park*, No. 17-CV-05339-JST, 2019 WL 1766163, at *14 (N.D. Cal. Apr. 22, 2019) (finding that plaintiffs had raised triable issues of fact as to whether officers were adequately trained on risks of asphyxiation by "pointing out that [municipality] [had] no official policies or guidelines regarding restraint techniques and positional asphyxia" and based on the officers' "deposition testimony . . . as [to] the adequacy of the training they received"); *Garcia v. Yuba Cnty. Sheriff's Dep't*, No. 2:19-CV-02621-KJM-DB, 2023 WL

United States District Court
Northern District of California

3124398, at \*17 (E.D. Cal. Apr. 27, 2023) (finding genuine dispute as to whether City had actually trained the responding officers on crisis intervention based on evidence that certain resources had not been provided to officers, and that officers dispatched to mental health calls had not received crisis intervention training). Adopting Plaintiffs' argument here—that a plaintiff may raise a triable issue of fact as to an alleged failure to train without actually identifying a training deficiency or inadequacy—would mean that a training deficiency is "patently obvious" whenever a constitutional violation has occurred. *See Connick*, 563 U.S. at 64. The Court finds no basis for that broad rule. *See Perez v. City of Fresno*, 98 F.4th 919, 932 (9th Cir. 2024) ("Even adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city or county liable.") (citing *Harris*, 489 U.S. at 391); *see also Gonzalez v. City of Alameda*, No. 21-CV-09733-DMR, 2023 WL 6232239, at \*31 (N.D. Cal. Sept. 22, 2023) (granting summary judgment on *Monell* claim where plaintiff sought to rely solely on decedent's death "to demonstrate that [city's] training program amounted to deliberate indifference").

Accordingly, summary judgment is **GRANTED** in favor of the Arcata and State Defendants as to Plaintiffs' federal claims based on failure-to-train liability.[7]

### b. Ratification

The Arcata Defendants argue that the Court dismissed Plaintiffs' ratification theory, so they did not address it in their opening brief. *See* Dkt. No. 139 at 3, n.6. Defendants are incorrect. The theory is adequately alleged in the operative amended complaint, *see* Dkt. No. 100 ¶¶ 118–20, and Defendants did not oppose amendment, *see* Dkt. No. 104. Moreover, Plaintiffs asserted their ratification argument in their brief opposing summary judgment, *see* Dkt. No. 146 at 23–25, Defendants still failed to respond to it substantively in their reply. *See* Dkt. No. 149

---

[7] The Estate Plaintiffs point out that the State Defendants did not address any *Monell* theories in their briefing. *See* Dkt. No. 153 at 20, n.4. However, given Plaintiffs' counsel's summary of their argument at the motions hearing, the Court understands that Plaintiffs are also relying on the incident itself as evidence of the State Defendants' failure to adequately train their officers. *See* Tr. 22:14–15. Accordingly, the Court finds that the State Defendants are also entitled to summary judgment as to Plaintiffs' ADA and RA claims based on failure-to-train liability.

at 6–7.  Counsel for the Arcata Defendants eventually addressed the ratification theory at the motion hearing, *see* Tr. 19:2–20:3, but the Court will not consider arguments raised for the first time at oral argument.  *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010).  The State Defendants simply did not address any of Plaintiffs' *Monell* theories.  Under the circumstances, and without commenting on the merits of Plaintiffs' ratification arguments, the Court finds that summary judgment is **DENIED** as to Plaintiffs' claims asserting a ratification theory.  *See TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 802, 815 (C.D. Cal. 2010) ("By failing to squarely address [Plaintiffs'] theory, the Defendants have not carried their initial *Celotex* burden.").

## B.   State Law Claims

### i.   Excessive Force (Cal. Const., Article I, § 13)

#### a.   Sergeant Hoffman's Use of Intermediate Force

The Arcata Defendants contend they are entitled to summary judgment on the Estate Plaintiffs' excessive force claim under California law because Sergeant Hoffman's use of pepperballs against Chivrell was reasonable.[8]  Plaintiffs respond that summary judgment must be denied because the Court "has already found that there are "triable issue[s] of fact regarding the reasonableness of the force Hoffman used on Chivrell."  *See* Dkt. No. 146 at 31.  But as discussed above, the Court's prior ruling in the context of Plaintiffs' motion for summary adjudication, which viewed the facts in the light most favorable to Defendants, is not controlling here.  The

---

[8] Defendants' argument relies on case law applying the Fourth Amendment's reasonableness standard.  *See* Dkt. No. 139 at 20–23.  Plaintiffs imply that this is improper because the California Constitution "provides greater and broader protection" than the Fourth Amendment.  *See* Dkt. No. 146 at 30.  But in the case on which Plaintiffs rely for this proposition, *Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 928 (9th Cir. 2006), the Ninth Circuit actually rejected it.  *See* 464 F.3d at 930 (concluding there was "no support for the hypothesis that Article I § 13 of the California Constitution provides greater protection than the Fourth Amendment").  Instead, the Court clarified that "'the touchstone for all issues under the Fourth Amendment and article I, section 13 of the California Constitution is reasonableness.'"  *See id.* at 928 (quoting *Ingersoll v. Palmer*, 43 Cal. 3d 1321, 1328 (1987)).  The Fourth Amendment standard of reasonableness therefore applies to Plaintiffs' excessive force claim under the California constitution.  *See Olvera v. City of Modesto*, 38 F. Supp. 3d 1162, 1181 (E.D. Cal. 2014).  *Cf. Alves v. Cnty. of Riverside*, 135 F.4th 1161, 1164 (9th Cir. 2025) (clarifying that California tort law's "reasonable care" standard is distinct from the Fourth Amendment's "reasonableness" standard).

United States District Court
Northern District of California

1    Court still must address Defendants' summary judgment arguments, but now viewing the facts in

2    the light most favorable to Plaintiffs.

3           The Court finds that Defendants are not entitled to summary judgment because there are

4    genuine issues of fact as to the reasonableness of the force Hoffman used.  A threshold issue is

5    that Defendants fail to support their arguments with references to specific evidence in the

6    summary judgment record or caselaw.  Their opening brief does not cite a single fact or case to

7    support their reasonableness arguments, *see* Dkt. No. 139 at 21–23, and their reply cites only

8    generally to the motion for summary adjudication proceeding, along with the entire video of the

9    incident, *see* Dkt. No. 149 at 4.  This showing does not meet Defendants' initial summary

10   judgment burden.  *See Gomez v. City of Vacaville*, 483 F. Supp. 3d 850, 861 (E.D. Cal. 2020)

11   (explaining that, on summary judgment, "both parties must 'cit[e] to particular parts of materials

12   in the record ...; or show [ ] that the materials cited do not establish the absence or presence of a

13   genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact'")

14   (quoting Fed. R. Civ. P. 56(c)(1) and *Matsushita*, 475 U.S. at 586); *see also Kaur v. City of Lodi*,

15   263 F. Supp. 3d 947, 959 (E.D. Cal. 2017) ("Under summary judgment practice, the moving party

16   always bears the initial responsibility of informing the district court of the basis of its motion, and

17   identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

18   admissions on file together with affidavits, if any,' which it believes demonstrate the absence of a

19   genuine issue of material fact.") (citing *Celotex*, 477 U.S. at 323).

20          Moreover, the record reflects at least one triable issue of fact as to the reasonableness of

21   Hoffman's use of intermediate force against Chivrell.  For example, Defendants claim that as a

22   matter of law, Chivrell "posed an immediate [and] unacceptable danger to the officers and

23   civilians" as he neared the pedestrian footbridge connecting Arcata to McKinleyville.  *See* Dkt.

24   No. 139 at 22.  Defendants also maintain that "[t]he officers' individual and collective knowledge

25   of the threat cannot be disputed."  *Id.*  However, "[i]n considering 'whether there was an

26   immediate threat, a simple statement by an officer that he fears for his safety or the safety of

27   others is not enough; there must be objective factors to justify such a concern.'"  *Vos v. City of*

28   *Newport Beach*, 892 F.3d 1024, 1031–32 (9th Cir. 2018) (quoting *Mattos v. Agarano*, 661 F.3d

United States District Court
Northern District of California

433, 441–42 (9th Cir. 2011) (en banc)).  Viewing the facts in the light most favorable to Plaintiffs, the immediacy of the danger Chivrell posed to the public and the officers is reasonably disputed. During the incident, Chivrell did not interact with the two civilian cars or the bicyclist that passed by him on the road.  *See* Merin Decl., Ex. 21 at 02:40–03:15, 09:50–10:30, 15:00–15:10.  In addition, Chivrell was still about a mile away from the footbridge when Hoffman deployed the pepperballs, *see id.*, Ex. 31 at 321, and Defendants have not identified evidence of any pedestrians on the footbridge.  Chivrell had not touched his gun to that point, and was continuing to walk, not run, away from officers when Hoffman fired the pepperballs.  *See id.*, Ex. 21 at 16:00–18:00; Ex. 26 at 10:41–10:50 (Rodes informing Hoffman when he arrived on the scene that Chivrell had "refused to stop and talk to [officers] multiple times," but that he "[hadn't] made any violent gestures, or anything like that").  Based on these facts, a reasonable jury could find that Chivrell did not pose an immediate threat to the officers or the public that justified Hoffman's use of intermediate force.

Defendants also argue that "[a] formal warning prior to using the pepperball would have served no practical purpose and could have escalated the danger" because it "would have allowed time [for Chivrell] to react violently or seek cover."  *See* Dkt. No. 139 at 21–23.  But considering the evidence, a reasonable jury could just as easily conclude that even though Chivrell was armed, a warning was feasible.  Failing to give a warning generally weighs against the reasonableness of a particular use of force, even when the suspect is armed.  *See Hyer*, 118 F.4th at 1064.  As discussed, Chivrell had not drawn his weapon during his encounter with police, and was walking away from them at the time Hoffman deployed the pepperballs.  Making all reasonable inferences in Plaintiffs' favor, a factfinder could conclude that although Chivrell had not complied with the officers' orders previously, a warning reasonably and safely could have been given.  *See id.* (observing that officers' failure to warn before deploying intermediate force diminished the reasonableness of the force used even though the suspect was armed and had failed to comply with commands over the course of several hours).  Accordingly, the Court cannot conclude on this record that Sergeant Hoffman's use of force was reasonable as a matter of law.

1

### b. Officer Griffin's Use of Deadly Force

2

The State Defendants argue that they are entitled to summary judgment on the Estate

3

Plaintiffs' state law excessive force claim because Officer Griffin's use of deadly force against

4

Chivrell was reasonable as a matter of law. *See* Dkt. No. 150 at 26.[9]  Specifically, Defendants

5

contend that Griffin was entitled to use deadly force because Chivrell had "point[ed] [his] gun in

6

[the] officers' direction." *See id*. at 18.

7

The Court agrees.  "[E]ven though reasonableness traditionally is a question of fact for the

8

jury . . . defendants can still win on summary judgment if the district court concludes, after

9

resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively

10

reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  Under

11

Ninth Circuit precedent, "where a suspect threatens an officer with a weapon such as a gun or a

12

knife, the officer is justified in using deadly force." *See Smith*, 394 F.3d at 704; *see also Hayes v.*

13

*Cnty. of San Diego*, 736 F.3d 1223, 1234 (9th Cir. 2013) (observing that "threatening an officer

14

with a weapon does justify the use of deadly force").  It is therefore undisputed that Chivrell posed

15

an imminent threat to the officers before Officer Griffin shot him.  As discussed, inconvertible

16

evidence shows that after he was shot with the pepperballs, Chivrell turned, raised his gun in the

17

officers' direction, and fired.  *See* Merin Decl. II, Ex. 13 at 18:00–18:10; *id.*, Ex. 17 at 16:10–

18

16:30; *Scott v. Harris*, 550 U.S. at 381.  Officer Griffin then fatally shot Chivrell after seeing

19

Chivrell raise his gun.  *See* Merin Decl. II, Ex. 12 at 112.  Griffin stated that he believed Chivrell

20

was going to shoot him.  *See id.*  The Court finds that based on this evidence, Griffin's perception

21

that Chivrell was intending to shoot at officers was objectively reasonable, as was his use of

22

deadly force against Chivrell.  *See Smith*, 394 F.3d at 704; *see also Sheehan*, 575 U.S at 613

23

(finding reasonable officers' use of force against mentally ill suspect who was "coming at

24

25

------

[9] Similar to the argument they made against the Arcata Defendants, the Estate Plaintiffs argue that

26

the State Defendants have failed to meet their initial summary judgment burden with respect to this claim because they rely on their Fourth Amendment arguments, and for that reason do not

27

respond substantively to Defendants' arguments.  *See* Dkt. No. 153 at 24.  But as discussed above, Defendants' reliance on Fourth Amendment cases here is not improper because the reasonableness

28

standards under state and federal constitutional law are parallel.  *See Sanchez*, 39 F.4th at 553.

1    officers" with a knife).  *Cf. Hyer*, 118 F.4th at 1062 (holding that "a reasonable trier of fact could

2    find that Hyer was not wielding his weapon in a threatening manner" due to "conflicting

3    evidence" as to whether Hyer's weapon was loaded at the time deadly force was used).

4         In opposing summary judgment, Plaintiffs argue that by putting himself in a "lethal

5    coverage role" for Hoffman, Officer Griffin "implicitly recognized that his plan to have Hoffman

6    shoot Chivrell with pepper balls would "unreasonably place[] [officers] in harm's way and require

7    deadly force to get out."  *See* Dkt. No. 153 at 14 (internal citations and quotation marks omitted).[10]

8    Plaintiffs rely on a recent Supreme Court case, *Barnes v. Felix*, 145 S. Ct. 1353 (2025), which

9    clarified that "[t]o assess whether an officer acted reasonably in using force, a court must consider

10   all the relevant circumstances, including facts and events leading up to the climactic moment."  *Id.*

11   at 1356.  And it is true that, as part of the *Graham* analysis, courts consider whether an officer

12   "creates the very emergency he then resorts to deadly force to resolve" or whether he is "simply

13   responding to a preexisting situation."  *See Nehad*, 929 F.3d at 1135 (internal citation and

14   quotations omitted).  In addition, "a prior constitutional violation may proximately cause a later

15   excessive use of force."  *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir.

16   2021) (citing *Mendez v. Cnty. of Los Angeles*, 897 F.3d at 1076–82 (9th Cir. 2018)).

17        However, "officers are free from liability if they can show that the behavior of a shooting

18   victim was a superseding cause of the injury," rather than any constitutional violation.  *See*

19   *Mendez*, 897 F.3d at 1081.  Accordingly, where someone "intentionally tries to harm the officer,

20   who in turn draws his weapon and shoots, the [person's] intentional action would be a superseding

21   cause of the injury."  *See id.*  And here, none of Officer Griffin's pre-shooting conduct, whether or

22   not it was reasonable, negates the undisputed fact that he resorted to using deadly force only when

23   confronted by the immediate threat of Chivrell's raised gun.  In other words, Griffin did not create

24   the need to use deadly force by "misperceiv[ing] [Chivrell's] innocent acts as a threat."  *See*

25   *Mendez*, 897 F.3d at 1081.  Instead, he reasonably believed Chivrell, by raising his gun in the

26

27   [10] As discussed above, Plaintiffs do not provide any response substantively opposing summary judgment on their state law excessive force claim.  However, the Court construes their Fourth

28   Amendment arguments as applicable to their parallel state law claim.  *See Sanchez*, 39 F.4th at 553.

direction of the officers, posed a risk of imminent harm to officers and the public. *See Smith*, 394 F.3d at 704; *see also Hart v. City of Redwood City*, 99 F.4th 543, 552 (9th Cir. 2024) (holding that "immediacy of the threat posed by [suspect] as he approached with a knife [was] dispositive" as to the objective reasonableness of the officer's actions). Under the circumstances, even considering all of the relevant events leading up to the fatal shooting of Chivrell, Officer Griffin's use of deadly force was objectively reasonable.

### c. Failure to Intercede / Integral Participant Theories

The Arcata Defendants argue they are entitled to summary judgment on the Estate Plaintiffs' state law excessive force claim against Officers Rodes and Beechel alleging that they were integral participants in, or failed to intervene in, Hoffman's use of force. *See* Dkt. No. 139 at 23–24. Defendants maintain that "[n]either officer ordered, assisted, or encouraged the use of force . . . [.] Their roles were limited to mobile backup in a fast-moving encounter with an erratic and noncompliant gunman." *Id.* at 24.

The Court finds that the Arcata Defendants have not met their burden of showing as a matter of law that Rodes and Beechel were not integral participants in Hoffman's use of force. The "integral-participant doctrine . . . allow[s] liability 'only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury.'" *Spencer v. Pew*, 117 F.4th 1130, 1145 (9th Cir. 2024) (quoting *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022)). Here, Plaintiffs have submitted evidence that both Rodes and Beechel were aware of Sergeant Hoffman's plan to "just unload on" Chivrell with the pepperball launcher, *see* Merin Decl., Ex. 29 at 14:30–14:38, and acquiesced to the plan by providing armed backup to Hoffman before he shot the pepperballs. *See id.*, Ex. 23 at 293; *id.*, Ex. 24 at 300. On these facts, a reasonable jury could conclude that both officers participated in Hoffman's use of force "some meaningful way," making them integral participants. *See Hughes*, 31 F.4th at 1223; *see also Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (observing that under the integral participant rule, "'an officer who does not enter an apartment, but stands at the

United States District Court
Northern District of California

door, armed with his gun, while other officers conduct the search, can be a full, active participant in the search' and therefore can be subject to § 1983 liability") (quoting *Boyd*, 374 F.3d at 780); *Denby*, 2025 WL 841608, at *3 (holding that a jury could find that an officer was an integral participant in an unconstitutional search "given his role in providing armed cover for the other [officers] during the search").[11]  In addition, Defendants do not explain why a reasonable jury could not find that Rodes and Beechel had an opportunity to intervene to stop Hoffman from using force considering that he had given them both advance notice of his plan to deploy the pepperballs.  *See* Merin Decl., Ex. 26 at 13:50–15:15; Ex. 29 at 14:30–16:00.

The Court similarly finds that the State Defendants are not entitled to summary judgment Plaintiffs' integral participant and failure to intervene excessive force theories asserted against Officers Griffin and Cornejo-Mercado.  First, the State Defendants entirely fail to address the integral participant theory.  Moreover, Plaintiffs have raised a genuine dispute of fact as to whether Griffin and Cornejo-Mercado were integral participants in Hoffman's use of force.  Viewing the record in Plaintiffs' favor, a reasonable jury could find that Officer Griffin, like Rodes and Beechel, was an integral participant because he was aware of the plan to deploy pepperballs and provided lethal coverage to Hoffman.  *See* Merin Decl. II, Ex. 15 at 112.  Similarly, the evidence also reasonably supports a finding that Officer Cornejo-Mercado participated meaningfully in Hoffman's use of force because he had advance notice of the plan and drove Hoffman into position to deploy the pepperball launcher.  *See id.*, Ex. 12 at 103–104.  Second, Defendants argue that the officers had "no reason . . . to intervene" because Hoffman's use of force was justified.  *See* Dkt. No. 155 at 7.  This argument fails, as the Court has determined that there is a triable issue of fact as to whether Hoffman's use of force was justified.

\*\*\*

Summary judgment is **DENIED** as to the Estate Plaintiffs' state law excessive force claim asserted against Officer Hoffman based on his use of intermediate force, and against Officers Rodes, Beechel, Griffin, and Cornejo-Mercado based on integral participant and failure to

---

[11] As an unpublished Ninth Circuit decision, *Denby v. Engstrom* is not precedent, but may be considered for its persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

1    intervene theories.  Summary judgment is **GRANTED** as to the Estate Plaintiffs' excessive force

2    claim asserted against Officer Griffin based on his use of deadly force.

3         ii.    **Bane Act**

4         The Arcata and State Defendants argue that the Estate Plaintiffs' Bane Act claim fails

5    because Plaintiffs have not provided evidence of the officers' specific intent to violate Chivrell's

6    constitutional rights.  *See* Dkt. No. 139 at 31; Dkt No. 150 at 28.

7         The Court finds that summary judgment on this claim is unwarranted.  The Bane Act

8    allows a claim for violation of a plaintiff's state or federal civil rights when the violation is

9    achieved through "threats, intimidation, or coercion."  Cal. Civ. Code § 52.1.  A finding of a

10   constitutional violation in an excessive force claim is sufficient to satisfy the "threat, intimidation,

11   or coercion" element of the Act.  *Reese*, 888 F.3d at 1043 (citing *Cornell v. City & Cty. of San*

12   *Francisco*, 17 Cal. App. 5th 766, 800 (2017)).  However, "the Bane Act imposes an additional

13   requirement beyond a finding of a constitutional violation."  *Reese*, 888 F.3d at 1043.  A plaintiff

14   must show that an officer had a "specific intent to violate the arrestee's right to freedom from

15   unreasonable seizure."  *Id.* (citing *Cornell*, 17 Cal. App. 5th at 801).  Specific intent may be shown

16   through an officer's "reckless disregard of constitutional [or statutory] prohibitions or guarantees."

17   *Cornell*, 17 Cal. App. 5th at 803.

18        Here, Plaintiffs' Bane Act claim is based on their state law excessive force, ADA, and RA

19   claims.  *See* Estate SAC ¶¶ 166–175.  The Court has ruled that the excessive force claim may

20   proceed against Hoffman for his deployment of the pepperballs, and against the remaining officers

21   on Plaintiffs' derivative liability theories.  Accordingly, the "threat, intimidation, or coercion"

22   element of Plaintiffs' Bane Act claim is satisfied at this stage.  *See Reese*, 888 F.3d at 1043; *see*

23   *also Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (clarifying that "in

24   excessive force cases . . . [the Bane Act] does not require proof of coercion beyond that inherent in

25   the underlying violation").  Regarding the specific intent requirement, the Court finds that the

26   same factual questions that preclude summary judgment on the excessive force claim also

27   preclude summary judgment on this issue.  "If a reasonable jury concludes that [Chivrell] did not

28   pose an immediate threat" and Hoffman's use of force was therefore unlawful, "it could infer that

United States District Court
Northern District of California

30

the officers acted with reckless disregard" for Chivrell's rights.  *See Gonzalez*, 2023 WL 6232239, at *21; *see also Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024), *cert. denied sub nom. Cueto v. Chinaryan*, 145 S. Ct. 1927 (2025) (holding that "[i]n most cases . . . the existence of specific intent for a Bane Act claim is a question that is properly reserved for the trier of fact") (internal citation and quotations omitted).

Summary judgment on Plaintiffs' Bane Act claim is therefore **DENIED**.[12]

### iii.   Immunity for State Law Officers

The State Defendants argue that Officers Griffin and Cornejo-Mercado are immune from liability under California Government Code § 820.2, and that their conduct is privileged under California Penal Code § 835a.  *See* Dkt. No. 150 at 28.  Government Code section 820.2 does not apply here because it "does not shield from liability government employees who use excessive force in carrying out their duties."  *See Rodriguez*, 891 F.3d at 799; *see also Mendez*, 897 F.3d at 1084 (noting that "the California Supreme Court has held that [820.2] immunity applies only to policy decisions, not to operational decisions") (citing *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)).

However, the Court does find that Penal Code § 835a bars liability against Officer Griffin for tort claims arising from his use of deadly force.  Under this section, a police officer "who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance."  Cal. Penal Code § 835a.  The privilege to use justifiable force "applies to any tort liability arising out of such use of force."  *See Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 WL 4575389, at *17 (N.D. Cal. Sept. 20, 2019) (citing *Gilmore v. Superior Ct.*, 230 Cal. App. 416, 421 (1991)).  Because the Court has found that Officer Griffin's use of deadly force against Chivrell was reasonable as a matter of law, he is immune from liability for any tort claims arising from that force.  *See*

---

[12] The Court questions whether all of the alleged ADA and RA violations that survive summary judgment, especially those that do not rely on the use of excessive force, could constitute sufficient predicate violations under the Bane Act.  However, Defendants do not address this issue. Accordingly, the Court simply denies summary judgment as to Plaintiffs' Bane Act claim in its entirety.

United States District Court
Northern District of California

*Lawrence v. City & Cnty. of San Francisco*, 258 F. Supp. 3d 977, 998 (N.D. Cal. 2017), *on reconsideration in part*, No. 14-CV-00820-MEJ, 2018 WL 11606330 (N.D. Cal. July 6, 2018) (granting summary judgment in favor of officer based on § 835a immunity where officer's use of force was reasonable as a matter of law). By contrast, the Court has determined that a reasonable jury could conclude that the Officer Griffin and Officer Cornejo-Mercado are liable for Sergeant Hoffman's use of force as integral participants or based on their failure to intervene. As such, § 835a does not bar Plaintiffs' tort claims against the State officers premised on these theories.

### iv.   Battery, Negligence, and Wrongful Death

Summary judgment is **GRANTED** on these claims against Officer Griffin to the extent they are premised on his use of deadly force, which is privileged under state law.

As to the remaining theories of liability asserted against the officers, Plaintiffs' battery, negligence, and wrongful death claims flow from the same facts as their excessive force claim. *See* Estate SAC ¶¶ 176–82 (battery); 192–200 (negligence); 200–209 (wrongful death); A.C. SAC ¶¶ 151–60 (wrongful death).[13] "Courts generally analyze these claims under the same rubric as § 1983 claims based on the Fourth Amendment." *Banks v. Mortimer*, 620 F. Supp. 3d 902, 935 (N.D. Cal. 2022). *See e.g.*, *Sommers*, 516 F. Supp. 3d at 991 (denying summary judgment on battery, wrongful death, and negligence claims because there was a factual dispute as to whether the defendant's use of force was reasonable). Defendants' core argument in favor of summary judgment on these claims is that Officer Hoffman's use of force was justified. *See* Dkt. No. 139 at 32; Dkt. No. 155 at 7. But as previously discussed at length, there are triable disputes of fact as to the reasonableness of Sergeant Hoffman's use of force and the liability of the other officers for such force. Accordingly, because these theories of liability for excessive force survive summary judgment, Defendants are not entitled to summary judgment on Plaintiffs' battery, negligence, and wrongful death claims premised on the same theories.

The Arcata Defendants argue that Rodes and Beechel are entitled to summary judgment on these claims because they "did not use force." *See* Dkt. No. 139 at 32. Defendants thus imply that

---

[13] The A.C. Plaintiffs assert a wrongful death claim that mirrors the Estate Plaintiffs' claim. *See* A.C. SAC ¶¶ 151–60.

United States District Court
Northern District of California

Plaintiffs' derivative liability theories are unavailable for these tort claims, but provide no support for this assertion. In response, Plaintiffs argue that district courts have found even officers who did not themselves use force subject to tort liability. *See* Dkt. No. 146 at 33 (citing *Stubblefield v. City of Novato*, No. 15-CV-03372-JCS, 2016 WL 192539, at \*7 (N.D. Cal. Jan. 15, 2016), in which another judge in this district found that the plaintiff's plausible allegations that an officer was an "integral participant" in the use of unreasonable force were sufficient to allege that he aided and abetted the commission of a battery, and *Dixon v. Oleachea*, No. 215CV2372KJMACP, 2018 WL 2088061, at \*4 (E.D. Cal. May 4, 2018), *report and recommendation adopted,* No. 215CV2372KJMACP, 2018 WL 2734994 (E.D. Cal. June 7, 2018), in which an officer's failure to stop another officer's alleged use of excessive force was sufficient to state a negligence claim). Defendants do not respond to these arguments on reply, or supplement their affirmative argument with any legal authority. Under the circumstances, Defendants have not shown that the officers who did not use force themselves are entitled to summary judgment on Plaintiffs' derivative tort claims as a matter of law. Summary judgment is therefore **DENIED** as to Plaintiffs' battery, negligence, and wrongful death claims arising from Sergeant Hoffman's use of force and the other officers' related conduct.

> **v.    Intentional Infliction of Emotional Distress**

Summary judgment is **GRANTED** on this claim against Officer Griffin to the extent it is premised on his use of deadly force, which is privileged under state law. *See Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1106 (N.D. Cal. 2011) ("Conduct that is privileged may not form the basis for an IIED claim.") (citing *Ross v. Creel Printing & Publishing Co.,* 100 Cal. App. 4th 736, 745 (Cal. Ct. App. 2002)).

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). Taking all inferences in Plaintiffs' favor, the Court finds that they have raised disputed issues of fact

United States District Court
Northern District of California

regarding the reasonableness of Hoffman's use of force and the other officers' related conduct that preclude entry of summary judgment as a matter of law. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 487, n.17 (9th Cir. 2007) (noting that summary judgment on IIED claim was improper where summary judgment was denied on excessive force claim). Summary judgment is thus **DENIED** as to Plaintiffs' IIED claim arising from Sergeant Hoffman's use of force and the other officers' related conduct.

### vi.    Punitive Damages

Plaintiffs seek punitive damages against the individual officers under state and federal law. *See* Estate SAC at 35, §§ 2, 4; A.C. SAC at 23, §§ 2–3. Because the Court has dismissed on qualified immunity grounds all federal claims asserted against the individual officers, California law is the only applicable standard. "California law conditions punitive damages on the plaintiff proving 'by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.'" *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1050 (N.D. Cal. 2014) (quoting Cal. Civ. Code § 3294(a)). "Malice" includes the "willful and conscious disregard of the rights or safety of others." *Id*. § 3294(c)(1). The Court finds that the evidence in this case is sufficient to raise a triable issue as to the state of mind of each officer during their encounter with Chivrell. However, the Court has determined that when he used deadly force, Officer Griffin reasonably believed that Chivrell posed an imminent threat of harm, and his use of force was justified. Accordingly, summary judgment is **DENIED** on the issue of punitive damages, to the extent this claim is not based on Officer Griffin's use of deadly force.

## IV.    ADMINISTRATIVE MOTION TO SEAL

Plaintiffs have filed administrative motions to consider whether another party's material should be sealed. *See Estate of Charles Chivrell*, Dkt. No. 147; *A.C. et al*, Dkt. No. 75. Pursuant to Civil Local Rule 79-5(f)(1), Plaintiffs conditionally filed under seal three documents designated as "Confidential" by Defendant City of Arcata. *See* Dkt. No. 147 at 1. The documents include the Peace Officer Standards and Training (POST) profiles of Arcata police officers Brian Hoffman, Joseph Rodes, and Evan Beechel. *See id*.

Courts generally apply a "compelling reasons" standard when considering motions to seal

1    documents.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*

2    *v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).  When a party seeks to seal a

3    document that has been designated as confidential by another party or non-party, the party filing

4    the sealing motion need not satisfy the showing described above.  *See* Civ. L-R 79-5(f)(1).

5    Instead, within seven days of the motion's filing, the designating party must file a statement or

6    declaration justifying the reasons for keeping the document or information under seal.  *Id.*

7    79-5(f)(3).  A failure to file a statement or declaration may result in the unsealing of the

8    provisionally sealed material without further notice to the designating party.  *Id.*

9         Here, the Arcata Defendants failed to file a statement in response to either of Plaintiffs'

10   motions.  Accordingly, the Court **DENIES** the motions to seal.  *See* Civ. L.R. 79-5(f)(3).  The

11   Court **DIRECTS** the parties to file public versions of all documents for which the proposed

12   sealing has been denied within ten days from the date of this order.

13   **V.    CONCLUSION**

14        Based on the foregoing, the motions for summary judgment, *Estate of Charles Chivrell*,

15   Dkt. Nos. 139 and 150, and *A.C. et al*, Dkt. Nos. 72 and 80, are **GRANTED IN PART AND**

16   **DENIED IN PART** as follows:

17   •    GRANTED on qualified immunity grounds as to the Estate Plaintiffs' Fourth Amendment
18        claims against Officers Rodes, Beechel, Griffin, and Cornejo-Mercado;

19   •    GRANTED on qualified immunity grounds as to the Estate Plaintiffs' and A.C. Plaintiffs'
         Fourteenth and First Amendment claims against Sergeant Hoffman and Officers Rodes,
20        Beechel, Griffin, and Cornejo-Mercado;

21   •    DENIED as to the Estate Plaintiffs' ADA and RA claims against the City of Arcata, Arcata
22        Police Department, the State of California, and California Highway Patrol;

23   •    GRANTED as to the Estate Plaintiffs' *Monell* claims against the City of Arcata, Arcata
         Police Department, the State of California, and California Highway Patrol asserting a
24        failure to train theory, but DENIED as to the claims asserting a ratification theory;

25   •    DENIED as to the Estate Plaintiffs' state law excessive force claim against Officer
26        Hoffman based on his use of intermediate force, and against Officers Rodes, Beechel,
         Griffin, and Cornejo-Mercado based on integral participant and failure to intervene
27        theories; but GRANTED as to Officer Griffin based on his use of deadly force;

28   //

United States District Court
Northern District of California

- DENIED as to Plaintiffs' Bane Act, battery, negligence, wrongful death, and IIED claims against Officer Hoffman based on his use of intermediate force, and against Officers Rodes, Beechel, Griffin, and Cornejo-Mercado based on integral participant and failure to intervene theories; but GRANTED as to Officer Griffin based on his use of deadly force;

- GRANTED as to the issue of punitive damages under federal law, but DENIED as to the issue of punitive damages under California law, to the extent the claim is not based on Officer Griffin's use of deadly force.

The Court also **DENIES** the administrative motions to seal, *Estate of Charles Chivrell*, Dkt. No. 147, and *A.C. et al*, Dkt. No. 75.

Finally, the Court **SETS** case a case management conference on August 5, 2025, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. No case management statement is required.

**IT IS SO ORDERED.**

Dated:    8/4/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge